CITY OF CEDARBURG LIGHT & WATER COMMISSION, Plaintiff and Respondent, v. ALLIS-CHALMERS MANUFACTURING COMPANY, Defendant and Respondent: NORDBERG MANUFACTURING COMPANY, Defendant and Appellant.*

*January 3—January 31, 1967.*

* Motion for rehearing denied, without costs, on April 11, 1967.

562

For the appellant there were briefs by *Foley, Sammond & Lardner,* and oral argument by *Steven E. Keane* and *Gilbert W. Church,* all of Milwaukee.

For the plaintiff-respondent there was a brief by *Levy & Levy* of Cedarburg, and by *Kivett & Kasdorf* of Milwaukee.

For the defendant-respondent there was a brief by *Quarles, Herriott & Clemons,* attorneys, and *L. C. Hammond, Jr.,* and *John S. Holbrook, Jr.,* of counsel, all of Milwaukee, and oral argument by *Mr. Hammond.*

GORDON, J. This appeal involves a jury's findings which have been sustained by the trial court. Upon review in this court we are committed to the rule that the judgment must be upheld if there is any credible evidence which under any reasonable view admits of an inference supporting the verdict. *Burlison v. Janssen* (1966), 30 Wis. (2d) 495, 141 N. W. (2d) 274; *Zweifel v. Milwaukee Automobile Mut. Ins. Co.* (1965), 28 Wis. (2d) 249, 137 N. W. (2d) 6. Our search is only for evidence supporting the jury's findings. *Olson v. Milwaukee Automobile Ins. Co.* (1954), 266 Wis. 106, 62 N. W. (2d) 549, 63 N. W. (2d) 740. These standards apply not only as to the presence of negligence but also as to the existence of causation. *Milwaukee & Suburban Transport Corp. v. Royal Transit Co.* (1966), 29 Wis. (2d) 620, 139 N. W. (2d) 595; *Krause v. Menzner Lumber & Supply Co.* (1959), 6 Wis. (2d) 615, 95 N. W. (2d) 374.

The record in the case at bar is lengthy. The jury verdict contained 43 questions. Our study of the transcript persuades us that notwithstanding the length of the proceedings and the complexity of the subject, the trial was fairly conducted. We also believe that an intelligent verdict and a proper judgment were reached despite the many contradictions in the evidence. In our view, there is both expert and lay testimony which, together with the inferences which can fairly be drawn therefrom, afford at least the minimum credible evidence to show that the appellant was causally negligent.

There was evidence offered which would warrant the jurors' belief that there was causal negligence in Nordberg's failure to shop-test the engine. One of the expert witnesses was Mr. Fodor, who works as a consulting engineer and who had spent four years as an engineer with Allis-Chalmers. He testified that the failure to test the engine before delivery was not in accordance with good engineering practice. Although counsel for Nordberg attempted to show that this opinion was based on a mis-

taken assumption that the equipment in question was a "prototype," there is evidence in the record which would permit the jurors to conclude that the machine was in fact a prototype.

A prototype was described as an engine which is the first of its kind or one in which there has been a large design change. With regard to the machine in question, Mr. Brinson, the chief engineer of Nordberg's power machinery division, testified that Nordberg had not previously built an identical unit. At another point, he stated that Nordberg had not constructed a diesel engine unit for generating electricity which had the same number of cylinders as that of the Cedarburg unit. In addition, Exhibit 68, a written memorandum from Mr. Brinson, contains the following statement with reference to the machine in question:

"Additional tests beyond what we were able to do in the shop are desirable in view of the fact that this will be our first application of Brown-Boveri turbochargers to our two-cycle engines."

The jurors may have concluded that the failure to shop-test was an act of negligence, and they also were entitled to find such negligence to be a cause of the accident. The purpose of a shop-test is to expose defects in the equipment. The jury may have believed that a shop-test would have disclosed some of the flaws which subsequently developed. We believe that the jury may have properly inferred that the failure to test the machine was a substantial factor in producing the damages.

In addition, the triers of fact were entitled to have found negligence in connection with the evidence that Nordberg placed the unit on an around-the-clock operation during the testing period even though certain fuel tube failures occurred. Mr. Fodor testified that in his opinion it was not "good engineering practice to continue the engine operation around-the-clock for two

weeks." He also indicated that this could have contributed to the failure of the damper bar. In our opinion, it was also within the province of the jury to find that the around-the-clock operation was causal.

There was extensive testimony concerning a number of malfunctions which occurred in the installation, maintenance and repair of the unit by Nordberg. Two engineers employed by Allis-Chalmers, Mr. Appleyard and Mr. Jandovitz, testified that various of the malfunctions contributed to the excessive vibrations.

When Mr. Jandovitz was asked whether he could put his finger on "any one of them, or any two, or collection of them, that did in fact cause the failure," he responded that "all were a contributing cause." He also acknowledged that anything which changed the vibration from normal "is equally a contributing factor."

Mr. Appleyard testified that in his opinion excessive vibrations caused the damper bar to break. He also believed that the source of the vibration was the diesel engine which drove the generator. Mr. Appleyard expressed the opinion that a source of the erratic vibration could have been "improper maintenance or operation."

In our opinion, it was proper to receive into evidence the testimony concerning the various malfunctions, and from all the evidence in this case the jury may have inferred a duty upon Nordberg to have avoided the malfunctions or to have detected them and taken steps to correct them before major damage occurred.

Nordberg argues that it could not be found liable in the absence of expert testimony on both the question of negligence and the question of causation. Generally, expert testimony is not required for proof of negligence. 7 Wigmore, Evidence (3d ed.), p. 453, sec. 2090. In *Tanberg v. Rydberg* (1965), 26 Wis. (2d) 91, 94, 131 N. W. (2d) 858, we said that "when a jury determines that given conduct either does or does not meet a 'standard of pru-

dence,' its finding is obviously entitled to significant weight."

We conclude that there was expert testimony from which a jury could find negligence on the part of Nordberg. Arguably, in the total absence of such expert testimony there may have been insufficient evidence as to the existence of negligence. The diesel and the generator involved in the case at bar are massive, complicated pieces of machinery which are not familiar to the average person. Whenever the question of negligence rests on facts or principles which would be extremely difficult for a conscientious juror to comprehend, the trial court may decline, upon motion, to permit the case to go to the jury in the absence of expert testimony on the negligence issue.

In malpractice cases, for example, expert testimony is necessary to prove whether the treatment constituted due care. *McManus v. Donlin* (1964), 23 Wis. (2d) 289, 127 N. W. (2d) 22; *Fehrman v. Smirl* (1963), 20 Wis. (2d) 1, 121 N. W. (2d) 255, 122 N. W. (2d) 439. That is not true, of course, in *res ipsa loquitur* situations, where the errors are of such a nature that a layman is competent to pass judgment thereon and to conclude from common experience that such things do not happen if there has been proper skill and care.

The cases cited immediately above illustrate that trial courts may depart from the general rule and require expert testimony on the negligence issue when convinced that it is necessary to permit the jury to reach an intelligent verdict. However, such a requirement is an extraordinary one and is to be applied by the trial court only when unusually complex or esoteric issues are before the jury; it is inappropriate where the presence or absence of negligence may be reasonably comprehensible to the jury even though it involves the use of inferences.

We have applied a related concept in holding that expert testimony is essential to establish an injured person's future medical expenses as well as his future pain and suffering. *Spleas v. Milwaukee & Suburban Transport Corp.* (1963), 21 Wis. (2d) 635, 642, 124 N. W. (2d) 593; *Rogers v. Adams* (1963), 19 Wis. (2d) 141, 119 N. W. (2d) 349; *Diemel v. Weirich* (1953), 264 Wis. 265, 58 N. W. (2d) 651.

The appellant also urges that we adopt a rule which would permit a trial court to require that causation be established with expert testimony. We consider that it is not essential to have expert testimony on the issue of *causation.* Whether a causal connection exists is a matter peculiarly within the jury's scope, and we reject the contention that a jury may be prohibited from inferring causation without the guidance of expert testimony.

The appellant maintains that the experts' testimony in this case is speculative, but our review of the evidence does not sustain that contention. Further, we do not agree with the appellant's claim that Mr. Fodor's testimony ruled out the existence of causal negligence on the part of Nordberg. In effect, the appellant argues that Mr. Fodor was Allis-Chalmers' "best qualified" expert and, therefore, the respondent is bound by his evidence. Although Mr. Fodor was called as a witness by Allis-Chalmers and may have been well qualified to give expert testimony, these facts do not bar Allis-Chalmers from offering conflicting evidence on the part of other experts.

In *State v. Timm* (1944), 244 Wis. 508, 516, 12 N. W. (2d) 670, this court said:

"It is elementary that 'The rule which forbids one to impeach his own witness must not be understood to imply that the party is bound to accept the testimony of a witness as correct. On the contrary, the one producing a witness may prove the truth of material facts by any

other competent evidence even though the effect of the testimony is directly to contradict his own witness.' And 'a party may rely on part of such testimony, although in other parts the witness denies the facts sought to be proved.' 3 Jones, Evidence (4th ed.), pp. 1588, 1590, sec. 857."

Although the *Timm Case* did not involve testimony given by an expert, we believe that the same rule should apply to situations where one offers to introduce into testimony the views of more than one expert witness. A party who submits the opinions of more than one expert is not committed to any one of them. In valuation cases, for example, the experts on the same side frequently disagree. In *Smuda v. Milwaukee County* (1958), 3 Wis. (2d) 473, 475, 89 N. W. (2d) 186, one litigant offered two experts giving two different values; the other party offered four experts who gave four different values.

We have examined the appellant's contention that there was improper "inference pyramiding" and also that other evidence was improperly admitted. We conclude that the trial was free from prejudicial error and that the judgment based upon the jury's findings should be upheld.

*By the Court.*—Judgment affirmed.

The following memorandum was filed April 11, 1967.

PER CURIAM (*on rehearing*).

Our statement in the original opinion "it is not essential to have expert testimony on the issue of *causation*" is too broad and not universally true. There may be cases where the issue of causation, like the issue of negligence, involves technical, scientific or medical matters which are beyond the common knowledge or experience of jurors and without the aid of expert testimony the jury could only speculate as to what inferences to draw if it were left to determine the issue. The lack of expert testimony in such cases results in an insufficiency of proof. See

*Kreyer v. Farmers' Co-operative Lumber Co.* (1962), 18 Wis. (2d) 67, 117 N. W. (2d) 646 (cause of a barn fire) ; *Peterson v. Greenway* (1964), 25 Wis. (2d) 493, 131 N. W. (2d) 343 (cause of death of heifers).

We modify our opinion to state it may be essential to have expert testimony in some cases on the issue of causation and, consequently, the lack of it may prevent a jury from considering the issue. However, in the instant case, contrary to the contention of the defendant and as we pointed out in the original opinion, there was at least a minimal sufficiency of expert testimony and lay testimony on causation to support the finding the jury made. The rehearing is denied without costs.