RACINE COUNTY, Plaintiff-Appellant,

v.

ORACULAR MILWAUKEE, INC., Oracular, Inc.,
Oracular of Minnesota, LLC and
Oracular of Michigan, Inc.,
Defendants-Respondents-Petitioners.

Supreme Court

*No. 2007AP2861. Oral argument January 6, 2010.*
*—Decided April 2, 2010.*

2010 WI 25

(Also reported in 781 N.W.2d 88.)

684

For the defendant-respondents-petitioners there were briefs by *Jeffrey P. Aiken, Eric J. Meier,* and *Whyte Hirschboeck Dudek S.C.,* Milwaukee, and oral argument by *Jeffrey P. Aiken.*

For the plaintiff-appellant there was a brief by *Jeffrey L. Leavell, Danielle N. Lutz,* and *Jeffrey Leavell, S.C.,* Racine, and oral argument by *Jeffrey L. Leavell.*

¶ 1. ANNETTE KINGSLAND ZIEGLER, J. This is a review of a published decision of the court of appeals[1] that reversed and remanded an order of the Racine

---

[1] *Racine County v. Oracular Milwaukee, Inc.,* 2009 WI App 58, 317 Wis. 2d 790, 767 N.W.2d 280.

---

County Circuit Court, Judge Stephen A. Simanek presiding, which granted summary judgment to Oracular Milwaukee, Inc., Oracular, Inc., Oracular of Minnesota, LLC, and Oracular of Michigan, Inc. (collectively Oracular) and dismissed Racine County's breach of contract claim. Racine County alleged that Oracular, a computer systems and programming consultant, breached the Consulting Service Agreement (the Agreement) entered into between the parties. The circuit court granted summary judgment to Oracular on the grounds that Racine County's failure to name an expert witness was deficient as a matter of law. According to the circuit court, the Agreement was effectively a contract for professional services, for which the basis of liability is a claim of negligence. Racine County was therefore required to present expert testimony in order to demonstrate that Oracular's performance fell below the standard of care in the computer consulting industry. The circuit court denied Racine County's motion for reconsideration, and Racine County appealed.

¶ 2. The court of appeals reversed and remanded, concluding that Racine County was not required to present expert testimony because Oracular's alleged breaches of the Agreement were within the realm of the average juror's ordinary experience. Contrary to the circuit court's conclusion, the court of appeals held that for purposes of this case, computer consultants are not "professionals" and thereby not subject to professional standards of care. Instead, the court concluded that the Agreement between Racine County and Oracular was a simple contract for services.

¶ 3. Oracular petitioned this court for review, and we accepted. Though on different grounds, we affirm the decision of the court of appeals and remand to the circuit court for further proceedings.

¶ 4. The issue before this court is whether in order to survive summary judgment, Racine County was required to name an expert witness when the complaint alleged that Oracular breached the parties' Consulting Service Agreement by failing to institute the software as promised.

¶ 5. We conclude that in order to survive summary judgment, Racine County was not required to name an expert witness. As alleged, Racine County's breach of contract claim does not present issues so unusually complex as to require expert testimony as a matter of law. In so concluding, we do not close the door to the possibility that expert testimony may later assist the trier of fact in evaluating the breach of contract claim. Rather, we decide that based upon the pleadings and affidavits, Racine County was not required to name an expert witness in order to proceed. Moreover, the breach of contract claim presents numerous genuine issues of material fact which otherwise preclude summary judgment. Accordingly, though on different grounds,[2] we

---

[2] We do not reach the question of whether a computer consultant constitutes a "professional" for purposes of this case because that in itself has no bearing on whether expert testimony is required. The parties agree.

When professional services are at issue, the basis of liability may be negligence, *see Hoven v. Kelble,* 79 Wis. 2d 444, 463, 256 N.W.2d 379 (1977); *Micro-Managers, Inc. v. Gregory,* 147 Wis. 2d 500, 513, 434 N.W.2d 97 (Ct. App. 1988); however, expert testimony may or may not assist the trier of fact, *Netzel v. State Sand & Gravel Co.,* 51 Wis. 2d 1, 6, 186 N.W.2d 258 (1971). *See, e.g., White v. Leeder,* 149 Wis. 2d 948, 960, 440 N.W.2d 557 (1989) (concluding that expert testimony was not required to assist the jury in determining whether the manner in which the plaintiff kept a bull negligently caused the defendant's injury because the issue was "within the realm of lay comprehension"); *Hoven,* 79 Wis. 2d at 452 (stating that the doctrine of res ipsa

affirm the decision of the court of appeals and remand to the circuit court for further proceedings.

## I. FACTUAL BACKGROUND AND PROCEDURAL POSTURE

¶ 6. On November 10, 2003, Racine County submitted a Request for Proposal (RFP) to prospective vendors, "seeking a qualified consultant to upgrade [its] current Peoplesoft World software to Peoplesoft One 8.0 and install Peoplesoft One Human Resource and Payroll modules." In essence, Racine County sought the assistance of a computer consultant, comprised of a "Project Manager/Project Team," in the upgrade of its human resources, payroll, and financial software systems. According to the RFP, the project would include "software installation, data conversion (for payroll only), integration with other applications, final implementation, going live on Peoplesoft One, and training," and completion of the project would "result in a fully operational system tailored to the needs of Racine County."

loquitur "may be applied in medical malpractice cases and that the likelihood that negligence was the cause may be shown by expert medical testimony *in cases where it may not be so inferred on the basis of common knowledge*" (emphasis added)); *Cramer v. Theda Clark Mem'l Hosp.*, 45 Wis. 2d 147, 152–53, 172 N.W.2d 427 (1969) (citing numerous cases in which expert testimony was not permitted because the jury was capable of drawing its own conclusions on the issue of negligence); *City of Cedarburg Light & Water Comm'n v. Allis-Chalmers Mfg. Co.*, 33 Wis. 2d 560, 567, 148 N.W.2d 13 (1967). It does not follow, then, that the requirement of expert testimony is necessarily linked to the rendering of professional services. Accordingly, to evaluate the former, we need not determine whether Oracular is a "professional."

¶ 7. In outlining the project's scope, the RFP provided that "[t]he Project Manager will be involved with defining the project scope and creating the organization and structure needed to complete a successful upgrade and implementation." In addition, the RFP assigned the Project Manager training responsibilities:

Training: The Project Manager will:

a. Identify, recommend and coordinate Racine County's training needs.

b. Specify the type—

 i. Formal JDE training

 ii. Internal workshops

 iii. Web training

c. Assist in the proper training of the County's project team to gain the necessary understanding of the capabilities of the software.

d. Assist in understanding the software's rich functionality to better identify and establish accurate and realistic goals and objectives.

e. Provide effective communication and debriefing of the instructor(s) allowing the Project Manager to assist Racine County to refine the scope of business process analysis.

¶ 8. The RFP further provided that the project was to be completed in three stages. Phase 1, titled "Set up of Infrastructure and Configurative Network Computing," required the consultant to "install and configure Peoplesoft One 8.0 on the deployment server and set up a minimum of three fat client stations that will all run locally." Phase 2 was titled "Complete install, set up and training for new Peoplesoft One

Human Resources/Payroll." Within that phase, the RFP outlined the current and required functionality of Racine County's human resources and payroll systems. Phase 3 was titled "Upgrade current functioning modules from Peoplesoft World to Peoplesoft One."

¶ 9. Finally, the RFP listed several "Proposal Requirements." Relevant to this case, the RFP provided that "[v]endors shall submit a detailed proposal" that includes a "Project Task List":

> a. Break down the work program into the three phases ('1' through '3') as stated above . . . .
>
> b. Break down each phase into technical and application activities.
>
> c. Submit a proposed GANT [sic] Chart[3] schedule listing all procedures including training for each phase of the project. Identify the task name, duration (no. of days), start date, finish date and party responsible for each task.

¶ 10. On December 3, 2003, Oracular submitted to Racine County a "Proposal for PeopleSoft Consulting" (the proposal). In the proposal's "Executive Summary," Oracular stated its "intent to work with Racine County to implement OneWorld as a new baseline enterprise software solution." Oracular wrote that it would "combine the talents of [its] consulting organization with the talents of the Racine County staff in order to complete this project on time and on budget." The proposal's "Preliminary Project Plan" indicated that

---

[3] A Gantt chart, named after American engineer Henry Laurence Gantt, is "[a] chart that depicts progress in relation to time, often used in planning and tracking a project." *The American Heritage Dictionary of the English Language* 746 (3d ed. 1992).

Oracular would "[p]lan a staggered approach to begin each major area of accomplishment while focusing on a combined Go-Live date of September 1, 2004." Oracular also wrote, however, that "[a] detailed work plan will be completed prior to beginning the project and will need to be verified by the project team at that time."

¶ 11. The proposal also included a list of "Project Assumptions." Two of those assumptions were categorized as "Training & Education":

- Racine County will construct all end-user procedures and training materials for the project.

- All core training will be conducted internally and delivered by the project consulting staff. Training is to include guidance to key users on set-up or end-user procedure and training manuals.

¶ 12. Finally, to complete the project, Oracular proposed a seven-phase plan. Those seven phases were broken down in a Gantt chart, attached to the proposal as Addendum A. The Gantt chart listed a project duration of 170 working days and a "Go-Live" date of September 6, 2004.

¶ 13. On January 12, 2004, Oracular submitted to Racine County an additional addendum to its proposal, which made minor budget adjustments. The addendum also provided: "After reviewing and adjusting the proposed project plan we have identified a total of 862 hours required to perform tasks by Racine County financial representatives. This dedication will be required from January 19, 2004 through September 10, 2004 for a total of 35 weeks."

¶ 14. Racine County selected Oracular as the vendor for its software upgrade project. On February 2, 2004, the parties entered into a "Consulting Service

691

Agreement," which incorporated by reference the RFP, the proposal, Addendum A to the proposal, and the January 12, 2004, addendum to the proposal. In the event of a conflict or inconsistency among the documents, the Agreement instituted the following prioritization: (a) the Agreement, (b) Addendum A to the proposal, (c) the January 12, 2004, addendum to the proposal, (d) the proposal, and (e) the RFP. Pursuant to the Agreement, the total amount of the project was not to exceed $389,250. Oracular agreed to provide consulting services to Racine County, and Racine County agreed to accept consulting services and pay Oracular, on certain terms, including:

a. Proposal cost and project plan are based on requirements outlined in the Request for Proposal submitted by Racine County except for the following modifications:

 i. Project completion of Phase 1 through Phase 3 shall be started in a staggered approach with a combined Go-Live goal of September 7, 2004.

In addition, the Agreement included a termination provision, which provided that "[e]ither party may terminate this Agreement and/or outstanding Project Proposals by written notice of not less than fifteen days."

¶ 15. For reasons which we will discuss *infra*, Racine County terminated the Agreement on February 16, 2006, and commenced this lawsuit against Oracular on September 26, 2006. The complaint[4] alleged two causes of action: breach of contract and fraudulent represen-

---

[4] Racine County filed an amended complaint on December 15, 2006, that incorporated by reference the original complaint.

tations in violation of Wis. Stat. § 100.18 (2007–08).[5] In particular, Racine County alleged that the staff provided by Oracular was "for all practical purposes, incompetent" and that Oracular misrepresented "a time table for completion and implementation of the project." Oracular denied the allegations and counterclaimed for breach of contract, quantum meruit, and promissory estoppel.

¶ 16. On October 1, 2007, Oracular moved for summary judgment on Racine County's breach of contract claim. As its primary grounds, Oracular asserted that Racine County failed to carry its burden of proving that Oracular breached the standard of care. According to Oracular, the Agreement in this case was a contract for professional services, specifically computer software programming services. Therefore, citing *Hoven v. Kelble,* 79 Wis. 2d 444, 463, 256 N.W.2d 379 (1977), and *Micro-Managers, Inc. v. Gregory,* 147 Wis. 2d 500, 513, 434 N.W.2d 97 (Ct. App. 1988), Oracular argued that Racine County was required to prove negligence. To do so, Racine County needed expert testimony to demonstrate that Oracular's performance fell below the standard of care in the computer consulting industry. Because Racine County failed to name an expert witness, Oracular argued that it was entitled to judgment as a matter of law on the breach of contract claim.

¶ 17. In opposition to Oracular's motion for summary judgment, Racine County challenged Oracular's attempt to transform the breach of contract claim into

---

[5] All subsequent references to the Wisconsin Statutes are to the 2007–08 version unless otherwise indicated.

On February 19, 2007, the parties stipulated to the dismissal of Racine County's fraudulent representations claim, and the circuit court ordered its dismissal without prejudice on February 21, 2007.

a negligence claim. Racine County argued that expert testimony is not necessary to prove that Oracular breached the Agreement by not completing the project on time and by failing to provide competent training. Instead, Racine County employees were capable of presenting the necessary "fact testimony" to prove that Oracular did not provide the services contracted for.

¶ 18. Racine County submitted employee affidavits in support of its allegation that Oracular missed the original project deadline (the Agreement's "Go-Live goal" date of September 7, 2004), as well as several succeeding promised deadlines. According to Racine County's Finance Director, Douglas Stansil, "the project was, at most, 34% complete" as of September 7, 2004. Stansil further claimed that Oracular missed a September 27, 2004, extension deadline,[6] a September 2005 extension

---

[6] Racine County argued in its brief before this court, and again at oral argument, that the promised extension deadline of September 27, 2004, was memorialized in a letter sent "in August 2004" from Stansil to Oracular. That letter was attached as an exhibit to Stansil's affidavit. The letter thanks the recipient for "meeting with [Racine County] on August 2, 2004" and further states the following:

> It was helpful to review with you the importance of the September 27th go live date to Racine County. As we stated in the meeting, if the go live date is missed, the implementation of the HR Payroll system would bee [sic] delayed until next spring due to the increased workload at yearend. This would Cause [sic] the County to pay for an additional year of maintenance on the Infintium system and would require our staff unanticipated work on the Infintium system.

> Once again we appreciate your commitment to meeting the Go live date with a product that the County can have full faith.

However, as it appears in the record, the letter is actually dated November 2, 2006. Oracular does not dispute that the letter was sent in August 2004, and we therefore proceed under that

deadline, a December 2005 extension deadline, and finally, a January 2006 extension deadline. According to Stansil, by the time the Agreement was terminated on February 16, 2006, "the project as a whole was still not more than 53% done," and without a fully integrated software system, the project "was of absolutely no value to Racine County and was absolutely useless to Racine County."

¶ 19. Racine County also submitted several employee affidavits in support of its allegation that Oracular failed to provide the contracted-for training. For example, the affidavits of Racine County's human resources manager and payroll coordinator state that one of Oracular's training consultants was herself unfamiliar with the software. In addition, Racine County's systems analyst stated in his affidavit that Oracular's project manager admitted that Oracular staffed the project for failure from the beginning. Racine County argued to the circuit court that these affidavits make evident that the employees' testimony, without the aid of an expert witness, is sufficient to prove that Oracular breached the Agreement.

¶ 20. On November 30, 2007, the circuit court granted Oracular's motion for summary judgment and dismissed Racine County's breach of contract claim. At the motion hearing, the court stated that the summary judgment dispute "boil[s] down to . . . the necessity or lack of necessity of expert testimony to prove essentially what is pled as a breach of contract." The court was persuaded that "no matter what nomenclature" is

assumption. Likewise, Racine County argued in its brief that "[i]n May 2005," Stansil sent another letter to Oracular memorializing the promised September 2005 extension deadline. That letter, which was also attached to Stansil's affidavit, is actually dated November 13, 2006.

used, "the basis of liability is essentially negligence." As support, the court cited *Micro-Managers* for the conclusion that if a contract is viewed as the rendering of professional services, then the basis of liability is a claim of negligence in failing to perform the services with due care. *See* 147 Wis. 2d at 513. At issue in *Micro-Managers* was a contract for the design and development of computer software. *Id.* at 503–04. Given the complexity of developing a functioning computer system, the circuit court concluded that expert testimony is required in order for Racine County to prove that Oracular breached the Agreement: "[A]s a matter of law I believe the county would need to withstand the motion for summary judgment, someone with a degree of expertise opining that Oracular's performance fell below the standard of care required of a normal computer consultant when engaged in a consulting contract." Racine County moved for reconsideration, which the circuit court denied on December 6, 2007.

¶ 21. On April 8, 2009, the court of appeals reversed the order granting summary judgment to Oracular and remanded the case. *Racine County v. Oracular Milwaukee, Inc.*, 2009 WI App 58, 317 Wis. 2d 790, 767 N.W.2d 280. Adopting an eight-factor test,[7] the court

---

[7] The eight factors adopted by the court of appeals include the six identified by the District Court of New Jersey in *Hospital Computer Systems, Inc. v. Staten Island Hospital,* 788 F. Supp. 1351, 1361 (D.N.J. 1992) (quoting *Lincoln Rochester Trust Co. v. Freeman,* 311 N.E.2d 480, 483 (N.Y. 1974)) (" 'the requirements of extensive formal training and learning, admission to practice by a qualifying licensure, a code of ethics imposing standards qualitatively and extensively beyond those that prevail or are tolerated in the marketplace, a system for discipline of its members for violation of the code of ethics, a duty to subordinate financial reward to social responsibility,

concluded that computer consultants like Oracular do not constitute "professionals" for purposes of determining whether they are subject to professional standards of care. *See id.,* ¶¶ 32–33. Therefore, the Agreement between Oracular and Racine County was not a contract for professional services but rather a simple contract for services. *Id.,* ¶ 33.

¶ 22. The court of appeals further concluded that Racine County is not required to present expert testimony to recover on its breach of contract claim because the alleged breaches are "within the realm of the ordinary experience of the average juror." *Id.,* ¶ 42. Expert testimony is required "when the jury will be presented with complex [or] esoteric issues" because it will assist the trier of fact. *Id.,* ¶ 35 (citing *Netzel v. State Sand & Gravel Co.,* 51 Wis. 2d 1, 7, 186 N.W.2d 258 (1971)); *see* Wis. Stat. § 907.02. The court concluded that in this case, Racine County alleges two major breaches of contract, neither of which is complex or esoteric: the failure to provide training for Racine County's employees who would be using the software and the failure to fulfill the contract on a timely basis. *Oracular,* 317 Wis. 2d 790, ¶¶ 36, 37.

---

and, notably, an obligation on its members, even in non-professional matters, to conduct themselves as members of a learned, disciplined, and honorable occupation' "), and two additional characteristics set out by the Court of Appeals of New York in *Chase Scientific Research, Inc. v. NIA Group, Inc.,* 749 N.E.2d 161, 166 (N.Y. 2001) ("the learned professions, exemplified by law and medicine" and a relationship "of trust and confidence, carrying with it a duty to counsel and advise clients"). *See Oracular Milwaukee,* 317 Wis. 2d 790, ¶ 32.

Because we do not reach the question of whether a computer consultant is a "professional," *supra* note 2, we take no position on the reasonableness of the court of appeals' eight-factor test to identify what constitutes a "professional."

Furthermore, the court of appeals decided that it would reach the same result even if the Agreement between Oracular and Racine County was a professional services contract:

> Contrary to the circuit court's holding, expert testimony is not required as a matter of law to prove negligence in performance of a professional services contract. *Hoven* and *Micro-Managers* require only that, in actions on professional services contracts, negligence must be established for recovery; neither of those cases mandate[s] expert testimony on professional services contracts.

*Id.*, ¶ 39. In this case, Racine County did not allege that Oracular breached the Agreement by failing to comply with industry standards; rather, Racine County alleged that Oracular breached the Agreement by not completing the project by the date agreed to and by failing to provide competent training. *Id.*, ¶ 42.

¶ 23. Though on different grounds, we now affirm the decision of the court of appeals and remand to the circuit court for further proceedings.

## II. STANDARD OF REVIEW

■■■■■

¶ 24. " 'Whether the circuit court properly granted summary judgment is a question of law that this court reviews de novo.' " *Hocking v. City of Dodgeville,* 2009 WI 70, ¶ 7, 318 Wis. 2d 681, 768 N.W.2d 552 (quoting *Schmidt v. N. States Power Co.,* 2007 WI 136, ¶ 24, 305 Wis. 2d 538, 742 N.W.2d 294). We apply the same standards as those used by the circuit court, which are set forth in Wis. Stat. § 802.08. *Id.*; *see also Noffke v. Bakke,* 2009 WI 10, ¶ 9, 315 Wis. 2d 350, 760 N.W.2d 156. In addition, whether expert testimony is necessary to prove

a given claim is a question of law that we review de novo. *See Trinity Lutheran Church v. Dorschner Excavating, Inc.,* 2006 WI App 22, ¶ 26, 289 Wis. 2d 252, 710 N.W.2d 680.

## III. ANALYSIS

■■

¶ 25. Summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Wis. Stat. § 802.08(2). To make its determination, the court decides whether there is a genuine issue of material fact; the court does not decide the fact. *Grams v. Boss,* 97 Wis. 2d 332, 338, 294 N.W.2d 473 (1980); *see also Camacho v. Trimble Irrevocable Trust,* 2008 WI App 112, ¶ 11, 313 Wis. 2d 272, 756 N.W.2d 596. The court should "carefully scrutinize[]" the materials offered by the moving party, *Grams,* 97 Wis. 2d at 339, and should not grant summary judgment "unless the moving party demonstrates a right to a judgment with such clarity as to leave no room for controversy," *id.* at 338.

¶ 26. The party opposing summary judgment "may not rest upon the mere allegations or denials of the pleadings" but instead, through affidavits or otherwise, "must set forth specific facts showing that there is a genuine issue for trial." Wis. Stat. § 802.08(3). If "for reasons stated," that party cannot by affidavit present facts essential to justify its opposition, the court may refuse the motion for summary judgment or may order a continuance to permit such discovery to be had. § 802.08(4).

¶ 27. In this case, the circuit court improperly granted summary judgment to Oracular. Based upon the pleadings and affidavits, Racine County was not required to name an expert witness as a matter of law. Moreover, the breach of contract claim presents numerous genuine issues of material fact which preclude summary judgment.

### A. Expert Testimony

¶ 28. "The requirement of expert testimony is an extraordinary one." *White v. Leeder,* 149 Wis. 2d 948, 960, 440 N.W.2d 557 (1989). Expert testimony is often required when "unusually complex or esoteric" issues are before the jury because it serves to assist the trier of fact. *See* Wis. Stat. § 907.02; *White,* 149 Wis. 2d at 960; *City of Cedarburg Light & Water Comm'n v. Allis-Chalmers Mfg. Co.,* 33 Wis. 2d 560, 567, 148 N.W.2d 13 (1967). In contrast, expert testimony is not necessary to assist the trier of fact concerning matters of common knowledge or those within the realm of ordinary experience. *See Netzel,* 51 Wis. 2d at 6; *Cramer v. Theda Clark Mem'l Hosp.,* 45 Wis. 2d 147, 150, 172 N.W.2d 427 (1969). In fact, if the court or jury is able to draw its own conclusions without the aid of expert testimony, "the admission of such testimony is not only unnecessary but improper." *Cramer,* 45 Wis. 2d at 151. Of course, the admission of expert testimony is within the sound discretion of the circuit court. *Kerkman v. Hintz,* 142 Wis. 2d 404, 422, 418 N.W.2d 795 (1988). Expert testimony is admissible provided that the witness is "qualified as an expert by knowledge, skill, experience, training, or education," and the testimony "will assist the trier of fact to understand the evidence or to determine a fact in issue." Wis. Stat. § 907.02.

¶ 29. In this case, in order to survive summary judgment, Racine County was not required to name an expert witness. As a preliminary point, Racine County alleged breach of contract, not negligence. There is no allegation that Oracular's performance failed to meet the standards of the computer consulting industry—whatever those may or may not be. Accordingly, the issue is not whether Racine County is required to present expert testimony in order to demonstrate that Oracular's performance fell below the industry standard of care.[8] Instead, the issue is whether in order to survive summary judgment, Racine County was required to name an expert witness when the complaint alleged that Oracular breached the parties' Agreement.

¶ 30. As it was alleged in the complaint and presented in the affidavits, Racine County's breach of contract claim does not present issues so "unusually

---

[8] In its brief before this court, Oracular argued that in order for Racine County to succeed on its breach of contract claim, it must present expert testimony regarding Oracular's failure to meet the standards in the computer consulting industry because implicit in every service contract is a duty to perform consistent with standard industry custom and practice. For that proposition, Oracular cited *Milwaukee Cold Storage Co. v. York Corp.*, 3 Wis. 2d 13, 25, 87 N.W.2d 505 (1958). Contrary to Oracular's contention, *Milwaukee Cold Storage* does not hold that a prerequisite to proving breach of a services contract is a showing of the failure to perform consistent with standard industry custom and practice. Rather, in that case, this court recognized that "accompanying every contract there is a common-law duty to perform with care, skill, reasonable expedience, and faithfulness the thing agreed to be done, and that a negligent failure to observe any of such conditions is a tort as well as a breach of contract . . . ." *Id.* That a negligent failure to perform a contract with care and skill gives rise to a breach of contract claim is an entirely different matter from what is necessary to prove Racine County's breach of contract claim.

complex or esoteric," *White,* 149 Wis. 2d at 960, as to demand the assistance of expert testimony.[9] *See* Wis. Stat. § 907.02. Rather, the alleged breaches concern matters of common knowledge and are within the realm of ordinary experience. *See Netzel,* 51 Wis. 2d at 6; *Cramer,* 45 Wis. 2d at 150. In particular, Racine County alleges that Oracular breached the Agreement by not completing the project on time and by failing to provide competent training. On those alleged breaches, the trier of fact is capable of drawing its own conclusions without the assistance of expert testimony. *See Cramer,* 45 Wis. 2d at 151; Wis. Stat. § 907.02.

¶ 31. Based on its affidavits, Racine County intends to produce evidence that Oracular breached the Agreement by not completing the project on time. Racine County will argue that the Agreement expressly

---

[9] As its primary grounds for summary judgment, Oracular asserted that Racine County's failure to name an expert witness was deficient as a matter of law. We recognize that Racine County, in opposition to Oracular's motion, presented no affidavits refuting Oracular's specific point that expert testimony was required. Instead, the affidavits were focused solely on supporting Racine County's claim that Oracular breached the Agreement.

The party opposing summary judgment "may not rest upon the mere allegations or denials of the pleadings but the adverse party's response, by affidavits or as otherwise provided in this section, must set forth specific facts showing that there is a genuine issue for trial." Wis. Stat. § 802.08(3). While Racine County set forth specific facts in its affidavits demonstrating a genuine issue for trial on the breach of contract claim, it did not set forth specific facts in its affidavits demonstrating a genuine issue regarding the requirement of expert testimony. Instead, through its brief and at the motion hearing, Racine County rested upon argument to the circuit court that expert testimony was not necessary.

states that "[p]roject completion of Phase 1 through Phase 3 shall be started in a staggered approach with a combined Go-Live goal of September 7, 2004."[10] If September 7, 2004, was intended as the project deadline, *see* discussion of "Genuine Issues of Material Fact" *infra* Part III.B., the fact-finder is capable of determining for itself whether the project was indeed completed by that time. Similarly, the fact-finder can evaluate whether the deadline was repeatedly modified and repeatedly missed, as Racine County intends to argue. The question of whether the software installation project was completed by a specified date is distinct from the complexity of the work that goes into the installation—complexity that Racine County concedes. The former is not so "unusually complex or esoteric," *White,* 149 Wis. 2d at 960, as to require the assistance of expert testimony. *See* Wis. Stat. § 907.02.

¶ 32. Racine County also intends to produce evidence that Oracular breached the Agreement by failing to provide competent training. As shown in the affidavits, several Racine County employees will testify that one of Oracular's training consultants was herself unfamiliar with the software and that Oracular's project manager admitted that the project was staffed for failure. Based upon that evidence, the fact-finder is capable of drawing upon common knowledge and ordi-

[10] Oracular's argument that expert testimony is required to establish a "reasonable" time for project completion is without merit. A reasonable time for performance is implied "[w]here there is no provision as to the time for performance." *Delap v. Inst. of Am., Inc.,* 31 Wis. 2d 507, 512, 143 N.W.2d 476 (1966). In this case, the Agreement expressly states a project completion date. Whether that date was intended as a firm deadline or only a "goal" presents a question of fact which does not necessarily require the assistance of expert testimony.

nary experience to determine whether Oracular provided competent training. *See Netzel,* 51 Wis. 2d at 6; *Cramer,* 45 Wis. 2d at 150; Wis. Stat. § 907.02.

■

¶ 33. We conclude only that in order to survive summary judgment, Racine County was not required to name an expert witness. In so concluding, we do not close the door to the possibility that expert testimony may later assist the trier of fact in evaluating Racine County's breach of contract claim. Our point is only that in the posture of summary judgment, Racine County was not required to name an expert witness as a matter of law.

## B. Genuine Issues of Material Fact

■

¶ 34. We also conclude that the breach of contract claim presents numerous genuine issues of material fact which preclude summary judgment at this time. *See* Wis. Stat. § 802.08(2). To demonstrate, we need point to only the most glaring of examples. *See id.* (precluding summary judgment if there is a "genuine issue as to *any* material fact" (emphasis added)). Whether the Agreement's "Go-Live goal of September 7, 2004," was intended as a firm deadline or only a target completion date presents a genuine issue of material fact. *See Younger v. Rosenow Paper & Supply Co., Inc.,* 51 Wis. 2d 619, 629–30, 188 N.W.2d 507 (1971) ("While the legal effect to be given an agreement may, in a proper case, be determined on a motion for summary judgment, where there is a dispute as to the intent of the parties to the agreement, a fact issue is presented, and summary judgment is inappropriate." (emphasis omitted) (footnotes omitted)); *Lemke v. Larsen Co.,* 35 Wis. 2d 427,

431, 151 N.W.2d 17 (1967). Likewise, Oracular's assertion that the collaborative language used in the RFP and the proposal imposed "bilateral performance" obligations on the parties, some of which were out of Oracular's control, is disputed by Racine County and therefore presents a genuine issue of material fact. Finally, there is a factual dispute as to which party is responsible for the suspension of the project between the end of September 2004 and March 2005. Pursuant to Wis. Stat. § 802.08(2), any and all of these genuine issues of material fact preclude summary judgment at this time.

## IV. CONCLUSION

¶ 35. In summary, we conclude that in order to survive summary judgment, Racine County was not required to name an expert witness. As alleged, Racine County's breach of contract claim does not present issues so unusually complex as to require expert testimony as a matter of law. In so concluding, we do not close the door to the possibility that expert testimony may later assist the trier of fact in evaluating the breach of contract claim. Rather, we decide that based upon the pleadings and affidavits, Racine County was not required to name an expert witness in order to proceed. Moreover, the breach of contract claim presents numerous genuine issues of material fact which otherwise preclude summary judgment. Accordingly, though on different grounds, we affirm the decision of the court of appeals and remand to the circuit court for further proceedings.

*By the Court.*—The decision of the court of appeals is affirmed, and the cause remanded to the circuit court for further proceedings consistent with this opinion.