COURT OF APPEALS
DECISION
DATED AND FILED

June 24, 2025

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2024AP213**

Cir. Ct. No. 2021CV217

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT III

---

VALUE PLUS FLOORING, LLC,

    PLAINTIFF,

  V.

DON O. JOHNSON, LLC AND DON JOHNSON'S CUMBERLAND MOTORS, LLC,

    DEFENDANTS-CROSS-CLAIM
    PLAINTIFFS-THIRD-PARTY
    PLAINTIFFS-APPELLANTS,

NORTHWEST BUILDERS, INC.,

    DEFENDANT,

  V.

GRIES ARCHITECTURAL GROUP INC.,

    THIRD-PARTY DEFENDANT-RESPONDENT.

---

APPEAL from a judgment of the circuit court for Barron County: MAUREEN D. BOYLE, Judge. *Affirmed*.

Before Stark, P.J., Hruz, and Gill, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1      PER CURIAM. Don O. Johnson, LLC, and Don Johnson's Cumberland Motors, LLC (collectively, "Johnson"), appeal from a circuit court's order granting summary judgment to Gries Architectural Group, Inc., and dismissing Johnson's third-party breach of contract claim against Gries.  Johnson argues that the circuit court erred by concluding that Johnson was required to provide expert testimony in response to Gries' summary judgment motion to support Johnson's claim that Gries breached a contract by failing to meet the standard of care owed by Gries in providing architectural and structural engineering services.  We affirm.

## BACKGROUND

¶2      The underlying dispute in this case involves an allegedly defective tile floor installed by Value Plus, LLC, as part of Johnson's construction of a new automotive dealership.  Prior to the dispute, Johnson retained Gries to provide "architectural and structural engineering services for the construction of" the dealership.  Moreover, Johnson expected that Gries would be "both the architect and [Johnson's] representative for the construction" and that Gries would "address any warranty problems."   Johnson also hired Northwest Builders, Inc., as the "construction manager."  Northwest Builders contracted with Value Plus to install the dealership flooring.

¶3     Prior to being hired by Johnson, Gries submitted a proposal that stated Gries would, among other things, "provide design" for the dealership, "provide master site plan operations," prepare drawings and specifications, "complete all construction documents and submit" them for governmental approval, "[a]ssist" the construction manager in the development of a list of qualified subcontractors, "provide administration of the Contract for Construction," and "be your representative during construction until final payment to the contractor is due." The proposal further stated that Gries would "[r]eview change orders and submit [them] to [Johnson] with recommendations" and that Gries would "[r]eview and approve payment applications and acquire lien waivers." The proposal was accepted by Johnson, and Gries does not expressly deny that the proposal was a contract between it and Johnson.

¶4     During construction of the dealership, an issue arose with the installed tile flooring. Value Plus argued that the problems with the tile were the result of alternative tile being used for construction, which was ultimately selected for the project without Value Plus's input. After Northwest Builders failed to pay Value Plus in full for its completed work on the dealership, Value Plus brought this lawsuit against Johnson and Northwest Builders seeking a foreclosure lien to recover the value of unpaid labor and materials it furnished for the construction. Northwest Builders then filed a breach of contract cross-claim against Johnson, alleging that it had completed additional work on the dealership, pursuant to change orders totaling nearly $250,000, for which it was never paid.

¶5     Relevant here, Johnson claimed that the tile flooring installed by Value Plus was "defective," and it filed a third-party complaint against Gries for breach of contract and negligence on that basis. Johnson alleged that it had contracted with Gries to "provide architectural and structural engineering services

for the construction" of the dealership. Johnson further alleged that Gries had agreed to "lead the process of coordinating specifications for the project," administer "the construction contract," and act as Johnson's "representative during construction." According to Johnson, Gries' "actions or inactions in breach of its contractual obligations … led to the installation of a defective floor" and that the installation of the defective floor caused it damages. Johnson sought dismissal of Value Plus's claims against it, removal of the lien against the dealership property, and judgment against Gries to the extent Value Plus "recovers any judgment from" Johnson. The specific third-party claims alleged against Gries made no mention of the lien or the $250,000 in additional work Northwest Builders claimed to have performed pursuant to change orders.

¶6      Gries denied Johnson's allegations and moved for summary judgment on the third-party claims. Gries argued that Johnson had failed to provide any evidence from an expert to rebut Gries' expert witness's opinion that Gries' performance regarding the tile flooring met the standard of care for architectural services. Gries stated in its motion that its expert witness "opine[d] that the work Gries performed met the standard of care of architectural services and that the issues related to the tile installation were due to [Value Plus's] poor workmanship." Moreover, according to Gries' motion, Johnson's and Northwest Builders' experts "agree[d] that [Value Plus] did not install the tile in a manner consistent with the construction documents and that the tile damage was caused by [Value Plus's] failure to comply with the project specifications." Furthermore, none of the experts "opine[d] that Gries fell below the standard of care or that there [was] a causal connection between Gries' conduct and the tile issues and incorrect installation."

¶7    In response, Johnson argued that Gries' motion for summary judgment ignored "the other contractual obligations Gries owed to Johnson"— namely, Gries' obligation to "provide services related to the construction of the" dealership "*in addition* to architectural services." According to Johnson, Gries' duties included addressing lien and warranty issues, reviewing and approving payment applications, reviewing change orders, and informing Johnson whether the alternative tile proposed was appropriate.

¶8    Johnson stated that "[i]nstead of fulfilling these obligations, … Gries attended some meetings, sent some emails, and then stopped doing anything to resolve" the tile issue or the lien. For example, Gries never "conducted any testing" of the tile flooring or attempted to "get the defective floor corrected." Johnson alleged that it "relied on Gries to let" Johnson "know if the alternative tile proposed (and ultimately installed) … was appropriate." Johnson alleged that Gries informed Johnson that the alternative tile was "equal but less expensive" than the original tile.

¶9    Johnson also argued that Gries' breach of the contract "led directly to" the "construction lien filed by" Value Plus because Gries knew that Value Plus was threatening to file a lien but failed to adequately "stop the lien." Additionally, Johnson asserted that Gries' "poor management of the payment application system has also led to" Northwest Builders' assertion that it was owed nearly $250,000. According to Johnson, despite Gries' "responsibilities for reviewing pay application and administering the contract, no Gries representative ever informed" Johnson that Northwest Builders "believed it was entitled to" additional payment.

¶10    Gries disputed Johnson's characterization of its breach of contract claim, arguing that Johnson's claim, as stated in its third-party complaint, was

dependent "on professional design" and that "[o]ne cannot prove professional services caused ('led to') a defective floor without an expert's testimony regarding the professional standard of care."

¶11    The circuit court granted Gries' motion for summary judgment, concluding that expert testimony was required to demonstrate the standard of care applicable to architectural and structural engineering services. The court determined that any "additional responsibilities" Gries had pursuant to the contract fell "under [Gries'] obligations as an architectural firm" and that "any conclusions that a fact finder would need to make about whether or not [Gries'] services fell within a certain standard would require expert testimony." The court therefore dismissed Johnson's third-party claims against Gries.

¶12    Johnson now appeals, challenging the circuit court's decision granting Gries summary judgment on Johnson's third-party breach of contract claim.[1]

## DISCUSSION

¶13    We review an order for summary judgment de novo, using the same methodology as the circuit court. *Yahnke v. Carson*, 2000 WI 74, ¶10, 236 Wis. 2d 257, 613 N.W.2d 102. Summary judgment shall be awarded if "there is no genuine issue as to any material fact and … the moving party is entitled to a judgment as a matter of law." WIS. STAT. § 802.08(2) (2023-24).[2] Whether

---

[1] Johnson does not challenge the circuit court's decision granting Gries summary judgment on Johnson's third-party negligence claim, and we will not address that claim further.

[2] All references to the Wisconsin Statutes are to the 2023-24 version.

expert testimony is necessary to prove a given claim presents a question of law that we review independently. ***Racine County v. Oracular Milwaukee, Inc.***, 2010 WI 25, ¶24, 323 Wis. 2d 682, 781 N.W.2d 88.

¶14    "The requirement of expert testimony is an extraordinary one." ***Id.***, ¶28 (citation omitted). It is "often required when 'unusually complex or esoteric' issues are before the jury because it serves to assist the trier of fact." ***Id.*** (citation omitted). In such cases, it is necessary for a party alleging a claim to provide an expert opinion at the summary judgment stage. *See **id.***, ¶¶27-29; ***Dean Med. Ctr., S.C. v. Frye***, 149 Wis. 2d 727, 733-35, 439 N.W.2d 633 (Ct. App. 1989). "In contrast, expert testimony is not necessary to assist the trier of fact concerning matters of common knowledge or those within the realm of ordinary experience." ***Oracular Milwaukee***, 323 Wis. 2d 682, ¶28.

¶15    Johnson asserts that not all "services" provided by a "professional" are "professional services." (Formatting altered.) According to Johnson, the circuit court's ruling was based on the incorrect assumption that "no breach of contract claim can be brought against an architect or other professional absent an expert report finding a deficiency in the standard of care."[3] Johnson contends that the issues in this case are not limited to Gries' professional services. Rather, Johnson asserts, two issues fall within areas of common knowledge and lay comprehension: (1) whether Gries fully complied with its contractual obligations to address warranty disputes and manage contract payments, "*even though*

---

[3] We disagree with Johnson's characterization of the circuit court's ruling. In issuing its decision, the court did not conclude that expert testimony is always required in cases where breach of contract claims are made against professionals. Regardless, we independently review summary judgment decisions, and we reject Johnson's attempt to obtain reversal solely based on the circuit court's reasoning in granting Gries' motion for summary judgment.

Johnson is still left with a defective floor *and … had a lien filed against it*"; and (2) whether Gries fully complied with its obligation to act as Johnson's representative and manage the payment application and change order process, "*even though* [Northwest Builders] is now claiming that Johnson owes it nearly a quarter million dollars in additional change orders about which Gries has no knowledge."

¶16    Citing Johnson's third-party complaint, Gries asserts that Johnson cannot "now post-pleading transform its" breach of contract claim into claims that Gries "failed to address warranty disputes and manage contract payments" and "failed to act as [Johnson's] representative and manage the payment application and change order process."  Gries contends that the only claim asserted against Gries for breach of contract was "wholly dependent on proof that architectural and engineering services provided by [Gries] caused the installation of the *defective* flooring" and that "[o]ne cannot prove professional services caused ('led to') a defective floor without an expert's testimony regarding the applicable professional standard of care (and causation)."

¶17    Despite Johnson's argument on appeal that it was "entitled to de facto amend its complaint" in the circuit court, we agree with Gries that Johnson's attempt, through its summary judgment briefing in the circuit court, to expand its original breach of contract claim against Gries was improper. (Formatting altered.)  As alleged in the third-party complaint, Gries contracted with Johnson to "provide architectural and structural engineering services for the construction" of the dealership, that breach led to the installation of defective flooring, and the installation of the flooring caused Johnson damages.  Although the complaint further alleged that Gries agreed to "lead the process of coordinating specifications for the project," administer the "construction contract," and act as

Johnson's "representative during construction," the complaint did not allege that Gries breached the contract by failing to report a lien or mismanage the change orders. Moreover, even if these issues were alleged in the third-party complaint, there are no allegations in the complaint relating the change orders or the lien to the defective flooring. Rather, Johnson alleged that Gries' breach related solely to "the installation of … defective" flooring.

¶18 Wisconsin's notice pleading statute, *see* WIS. STAT. § 802.02(1)(a), does not permit Johnson to use its summary judgment pleadings to allege claims against Gries beyond the claims stated in its third-party complaint, particularly where it did not move to amend its complaint, *see **C.L. v. Olson***, 143 Wis. 2d 701, 706, 422 N.W.2d 614 (1988) ("Only if a claim has been stated does the court then proceed to determine whether the pleadings, depositions, answers to interrogatories, admissions, and affidavits demonstrate a genuine issue as to any material fact."); ***Broome v. DOC***, 2010 WI App 176, ¶12, 330 Wis. 2d 792, 794 N.W.2d 505 ("[T]he submissions by a plaintiff showing facts not alleged in the complaint do not 'cure' a pleading deficiency."); WIS. STAT. § 802.09 (detailing the process for amending a complaint).

¶19 Accordingly, the question, properly framed, is whether Johnson was required to provide an expert opinion in response to Gries' expert's evidence offered in support of Gries' summary judgment motion to show that Gries' performance of "architectural and structural engineering services" breached the

contract, led to "the installation of … defective" flooring, and caused Johnson damages.[4]

¶20 We agree with Johnson that case law dictates that a defendant who provides professional services under a contract can be successfully sued for breaching that contract without expert testimony where the defendant is alleged to have breached nonprofessional service duties. *See Estate of Rille v. Physicians Ins. Co.*, 2007 WI 36, ¶43 n.22, 300 Wis. 2d 1, 728 N.W.2d 693. Indeed, our state supreme court has explained:

> The mere fact that a professional, such as a doctor, dentist, lawyer or architect, enters into a contract that involves performing some professional service and some other service not within his [or her] professional expertise (financing, etc.) does not necessarily make or change that contract into a contract for "professional services" nor does it automatically transform the breach of the contract into a breach of professional obligations in his [or her] field of expertise.

*Herkert v. Stauber*, 106 Wis. 2d 545, 568, 317 N.W.2d 834 (1982).

¶21 The court in *Herkert* held that a plaintiff had failed to prove personal liability for a breach of contract claim—under statutes that preserved personal liability for "professional services"—for architects employed by an architectural

---

[4] We do not address Johnson's arguments related to Gries' alleged failure to "address warranty disputes and manage contract payments" and Gries' failure "to act as [Johnson's] representative and manage the payment application and change order process" because Johnson did not allege these claims in its third-party complaint.

As an aside, we note that Johnson asserts on appeal that there are no genuine issues of material fact regarding these claims because "Gries does not contend" that "it in fact reviewed the relevant 'change orders and submit[ted]'" them to Johnson "with recommendations" or that it in fact "acquire[d] lien waivers." However, as Gries notes in response, Gries never conceded these claims in the circuit court, nor does it do so on appeal.

services business because the record was "devoid of any evidence establishing that it is the responsibility or normal practice of professional architects to assist a client in securing financing or approval of a body politic for a construction project." *Id.* at 547-48, 567, 570. In other words, the breach of contract claim was tied to the architects' failure to secure financing or approval for the project, and, therefore, the architects were not performing within the realm of "professional services." *See id.* at 563, 570.

¶22 Similarly, in *Oracular Milwaukee*, Racine County filed a breach of contract claim against Oracular, a computer systems and programming consultant. *Oracular Milwaukee*, 323 Wis. 2d 682, ¶1. The parties' contract stated that Oracular would provide training as part of its upgrading of the County's human resources, payroll, and software systems. *Id.*, ¶¶6-7, 14. The contract also provided that the work would be completed by a certain date. *Id.*, ¶14. The County eventually terminated the agreement and commenced a lawsuit alleging, in relevant part, a breach of contract. *Id.*, ¶15. The County alleged that Oracular was "for all practical purposes, incompetent" and that Oracular misrepresented "a time table for completion and implementation of the project." *Id.* The circuit court granted Oracular summary judgment on the ground that the County failed to name an expert witness "in order to demonstrate that Oracular's performance fell below the standard of care in the computer consulting industry." *Id.*, ¶1.

¶23 On appeal, our state supreme court concluded that expert testimony was not needed at the summary judgment stage because the County did not allege that Oracular's "performance failed to meet the standards of the computer consulting industry." *Id.*, ¶29. Rather, the County alleged that Oracular breached the agreement "by not completing the project on time and by failing to provide

competent training. On those alleged breaches, the trier of fact is capable of drawing its own conclusions without the assistance of expert testimony." *Id.*, 30.

¶24 Johnson's breach of contract claim in this case is materially distinguishable from those in *Herkert* and *Oracular Milwaukee* because it is entirely dependent on whether Gries failed to adequately "provide architectural and structural engineering services for the construction" of the dealership and whether that failure "led to the installation of a defective floor." As the circuit court noted in its decision granting Gries' motion for summary judgment, Johnson's claim "goes to the professional expertise of" Gries.

¶25 Under the breach of contract claim as alleged, Johnson needed to show that Gries provided faulty professional architectural and structural engineering services that led to the installation of a faulty tile floor. To do so, Johnson required expert testimony because a lay person does not possess knowledge of the skills, standards, and expertise required of an architect to properly render those types of services. Further, Johnson required expert testimony to causally relate any claimed breach of Gries' contractual duty to provide professional architectural services to the defective tile installation. These conclusions are particularly true in this case where Gries' expert concluded that the "tile installation issues are not related to the design and/or specifications produced by" Gries, Gries' and Johnson's experts agreed that Value Plus did not install the tile flooring in a manner consistent with the construction documents, and Northwest Builders' expert concluded that Value Plus's installation of the tile was not consistent with industry standards.

¶26 Without expert testimony in the record, the circuit court properly granted Gries' motion for summary judgment on Johnson's third-party claim.

*See Dean Med. Ctr.*, 149 Wis. 2d at 733-35; *Oracular Milwaukee*, 323 Wis. 2d 682, ¶28.

*By the Court.*—Judgment affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.