Kevin L. WHITE and Jill L. White, Plaintiffs-
Respondents-Petitioners,

v.

Franklin LEEDER, Defendant,

THRESHERMEN'S MUTUAL INS. CO.,
Defendant-Appellant.

Supreme Court

*No. 87–1628. Argued March 1, 1989.—Decided June 1, 1989.*

(Also reported in 440 N.W.2d 557.)

948

For the plaintiffs-respondents-petitioners there were briefs by *James A. Drill, Lisa M. Drill,* and *Doar, Drill & Skow, S.C.,* New Richmond, and oral argument by *James A. Drill.*

For the defendant-appellant there was a brief by *Richard E. Rosenberg* and *Nowlan & Mouat,* Janesville, and oral argument by *Mr. Rosenberg.*

WILLIAM A. BABLITCH, J. Kevin White (White) brought this negligence action against Franklin Leeder (Leeder), and his insurer, Threshermen's Ins.

Co. (Threshermen's), to recover damages for injuries allegedly caused by a bull owned by Leeder. The primary issue on review is whether the trial court erred in giving Wisconsin Civil Jury Instruction 1391, relating to Leeder's duty to use ordinary care to restrain and control the animal as necessary to prevent injury to others. We conclude that Wisconsin Civil Jury Instruction 1391 is essentially designed to set forth the duty of the person who has control over the animal. The trial record supports the trial judge's conclusion that Leeder, the owner of the bull, had control over the bull. Accordingly, the trial court did not abuse its discretion in giving the instruction. We therefore reverse the decision of the court of appeals.

White was hired by Leeder on May 21, 1982, to be a herdsman on one of Leeder's two dairy farms. White was to maintain the entire dairy operation on one farm, as well as work in the fields when time permitted. Leeder's other farm was operated by his son, Steve. Leeder did not reside on either property, but directed and supervised the farm operations on a daily basis.

White's duties included milking 50 cows twice a day in a stanchion barn. Because the barn had only 48 stanchions, two cows had to be left outside during the milking until stanchions became available.

Leeder owned a bull that was kept on the farm for breeding purposes. The bull was free to roam with the cows anywhere in the barnyard, including a "dry barn" which had no equipment or materials in it.

On April 2, 1983, White brought 48 cows into the barn for their morning milking. After stanchions became available, White went outside to bring the other two cows in. He found the two cows lying on the floor of the dry barn with the bull between them. Upon noticing White, the cows arose and began walking toward the

milking barn. While White was watching the cows exit the dry barn, the bull rushed him and knocked him to the ground. White testified that he could not remember if he had been watching the bull prior to being struck. When White got up and attempted to back out of the barn, the bull came at him again and butted him in the stomach, carrying him ten to fifteen feet into a pile of manure. White allegedly suffered injuries as a result of this incident.

At trial, witnesses for both parties testified that bulls are dangerous and unpredictable. There was no evidence presented that this bull had attacked anyone prior to this incident, and in fact White testified that the bull had not presented any particular problems during the ten months the bull had been on the farm. However, Jill White testified that when she and the children were out in the yard, the bull would come to the closest point along the fence and bellow and paw the earth. She testified that she communicated concerns in this regard to Leeder.

There was a dispute at trial as to whether Leeder's bull had a ring in its nose, and what effect such a ring would have on the bull's disposition, if any. The Whites testified that the bull did not have a ring in its nose, and that they specifically requested Leeder ring the bull as a result of the way the bull bellowed and pawed in the barnyard. Although conceding that he was not an expert on bull behavior, Kevin White testified that had the bull been ringed, the animal would perhaps have had a "different type of attitude."

Leeder and his son, on the other hand, testified that the bull was ringed by an employee named Harold Gransee in their presence prior to being placed in service on the farm. Gransee substantially corroborated this testimony. Leeder also testified that a bull's

disposition is not altered by a ring in its nose, and that although he ringed all his bulls, there was no purpose in it "except that it is an old wive's tale."

Evidence was also presented in an attempt to show that the bull could have been kept in a different manner to prevent an accident. Jill White testified that she grew up on a dairy farm on which her father utilized holstein bulls. She testified that her father's practice was to confine the bull in a separate pen rather than allow the animal to run at large with the cows. According to Jill White, her father kept the bull in a separate pen in the barn and the cows would be put in the pen for breeding. The bull would remain in the pen except when her father walked it around the pasture for exercise while holding onto the ring in the bull's nose.

Various witnesses also testified that a chain could have been placed in the bull's nose ring to make the bull more docile and to provide an audible warning of the bull's actions. However, Leeder testified that in his experience such a chain adversely affected a bull's breeding ability. Leeder also testified that it would have been highly dangerous and impractical to keep the bull penned up or under restraints because the bull would be unable to perform its required function without additional animal maneuvering.

At the conclusion of the testimony, the trial court instructed the jury regarding ordinary negligence as well as contributory negligence. In addition, the jury was given Wis. J.I. Civil 1391, relating to Leeder's duty as the owner of the bull to use ordinary care to restrain and control the animal as necessary to prevent injury to others. The trial court read the instruction as follows:

> An owner of a bull is deemed to be aware of the
> natural traits and habits which are usual to a bull,

953

and it is his duty to use ordinary care to restrain and control the animal so that it will not in the exercise of its natural traits and habits cause injury or damage to the person or property of another.

In addition, if an owner is aware or in the exercise of ordinary care should be aware that the animal possesses unusual traits or habits that would be likely to result in injury or damage, then the owner must use ordinary care to restrain the animal as necessary to prevent the injury or damage.

The jury returned a verdict finding Leeder ninety percent causally negligent and White ten percent contributorily negligent. Judgment was entered on the verdict and Threshermen's appealed.

The court of appeals reversed. It concluded that Wis. J.I. Civil 1391 was an incorrect statement of the law as applied to the facts of the present case. According to the court of appeals, the instruction applied only to the duty of an owner to a third party, rather than the duty of an owner to the "keeper" of an animal. The court of appeals determined that White was the keeper of the bull, and therefore "should know of any of the animal's traits and habits that the owner does." The court concluded that the use of the instruction probably misled the jury as to Leeder's duty of care, and the case was remanded for a new trial on liability.

We reverse the decision of the court of appeals. We conclude that the trial court did not abuse its discretion in giving the jury instruction under the facts of the present case.

It is well established that a trial court has broad discretion when instructing a jury. *State v. Vick,* 104 Wis. 2d 678, 690, 312 N.W.2d 489 (1981). If an appellate court can determine that the overall meaning communi-

cated by the instruction as a whole was a correct statement of the law, and the instruction comported with the facts of the case at hand, no grounds for reversal exists. *Id.* at 690–91.

Wisconsin J.I. Civil 1391, cited below,[1] covers claims based on common-law negligence. *Denil v. Coppersmith,* 117 Wis. 2d 90, 92 343 N.W.2d 136 (Ct. App. 1983). At common law, the cases have established that the owner or keeper of a domesticated animal is held to anticipate the general propensities of the class to which the animal belongs, as well as any unusual traits or habits of the individual animal. *See Leipske v. Guenther,* 7 Wis. 2d 86, 88, 95 N.W.2d 774, 96 N.W.2d 821 (1959).

The common-law rule first requires the owner or keeper to use ordinary care in controlling the characteristics normal to the animal's class. The owner or keeper of a bull is thus required to take greater precautions to keep it under effective control than would be required of the owner of a cow or steer. *See* Restatement 2d, Torts, sec. 518, comment g, p. 31 (1977).

The common-law rule further allows the plaintiff to show that the individual animal had vicious or

---

[1]1391 LIABILITY OF OWNER OR KEEPER OF ANIMAL: COMMON LAW

An owner (keeper) of a(n) (insert name of animal) is deemed to be aware of the natural traits and habits which are usual to a(n) (animal), and it is his duty to use ordinary care to restrain and control the animal so that it will not in the exercise of its natural traits and habits cause injury or damage to the person or property of another.

In addition, if an owner (keeper) is aware or in the exercise of ordinary care should be aware that the animal possesses any unusual traits or habits that would be likely to result in injury or damage, then the owner (keeper) must use ordinary care to restrain the animal as necessary to prevent the injury or damage.

mischievous propensities, and that the owner or keeper knew or should have known of them. A vicious propensity is a tendency of an animal to do any act which might endanger the safety of persons or property in a given situation. *See* 3A C.J.S. Animals, sec. 180, p. 674 (1973).

In the present case, the trial court determined that the evidence established that bulls are dangerous and by their very nature possess propensities likely to result in injury. The jury was therefore instructed in accordance with the first portion of Wis. J.I. Civil 1391, that the owner of a bull is deemed aware of the natural traits of the animal and that he has a duty to use ordinary care to restrain and control the animal as necessary to prevent injury to others.

In addition, the trial court determined that Jill White's testimony concerning the bull's pawing and snorting sufficiently demonstrated the unusual traits or habits portion of the instruction, and that the evidence also established a factual question as to the awareness on the part of Leeder of these tendencies. Therefore, the jury was further instructed that if the owner is aware that a bull possesses unusual traits or habits, the owner is required to use ordinary care to restrain the animal such as to prevent injury to others.

We conclude that the trial court did not abuse its discretion in determining that bulls are dangerous and that pawing the ground and snorting may be a trait evidencing a vicious propensity. While the proof was slight and subject to more than one interpretation in respect to the issue whether pawing the ground and snorting demonstrated a vicious or mischievous propensity, it was a question for the jury. Regardless of the fact that the bull had never attacked anyone prior to

956

this incident, the jury could well infer that this activity demonstrated a vicious characteristic capable of causing harm and that Leeder knew this danger existed. It was also for the jury to determine whether the conduct in question met the standard of ordinary care. The trial court's instructions correctly stated the law regarding liability for harm done by domesticated animals and comported with the evidence at hand.

Threshermen's argues that the instruction given by the trial court was not designed to set forth a duty as between the owner and keeper of an animal. Whether or not Threshermen's is correct in its argument, that is not how the instruction was used. Wisconsin J.I. Civil 1391 was essentially designed to set forth the duty of the person who has control over the animal. That is how the court used the instruction and we conclude that it was a proper use.

In *Reuter v. Swarthout,* 182 Wis. 453, 456, 196 N.W. 847 (1924), a case involving a statute placing liability upon an "owner or keeper" for damages caused by animals allowed to run at large, we stated:

> It appears without contradiction that defendant had rented his place and stock, including the bull, to a renter who had exclusive possession and control of the same under his lease. Under these facts there can be no doubt but that the renter was the 'keeper' of the bull. ... The tenant permitted the bull to run at large. The owner did not do so, as he did not have control of the animal.

In the present case, as distinguished from *Reuter,* there was no evidence presented that White had any authority to make decisions concerning the methods employed in keeping the bull. White was not in

exclusive possession and control of the animal, and had no leasehold interest. The practice of allowing the bull freedom to roam at large in the cow yard was established by Leeder, and there was no indication that White could have changed the practice. Indeed, Threshermen's assertion that White was in sole charge of the animal is critically undercut by Leeder's deposition testimony to the effect that both Kevin and Jill White specifically requested Leeder initiate alternative practices as a result of the animal's behavior in the barnyard. Accordingly, we agree with the trial court that despite the fact White was herdsman with responsibility for maintaining the dairy herd on the farm, Leeder "was the one that was controlling how the bull was kept as between the two of them." Having determined that Leeder was the person in control of the bull, the trial court properly instructed the jury regarding the duty of Leeder to the injured party, White. Under the facts of this case, we conclude that White was not the keeper.

Threshermen's next argues that establishing a duty of ordinary care on the part of Leeder to protect White from harm virtually renders the owner an insurer of anyone coming on the property, including his own herdsman. We disagree.

The liability of an owner or keeper is predicated upon the failure to exercise ordinary care in the restraint and control of the animal. However, the doctrine of contributory negligence applies as well. Section 895.045, Stats., provides that any damages allowed are diminished in proportion to the amount of negligence attributable to the person recovering, and if such negligence is greater than the negligence of the person against whom recovery is sought, contributory negligence acts as a complete bar to recovery.

958

Here, the jury was given Wis. J.I. Civil 1007, defining contributory negligence. The jury was informed that the plaintiff has a duty to exercise ordinary care for his own safety. In addition they were instructed that the exercise of ordinary care requires increased vigilance depending on the circumstances present. The jury was entitled to find White negligent and in fact did so, assessing ten percent of the total negligence to him.

We cannot conclude that the jury's assessment of comparative negligence was grossly disproportionate. The comparison of causal negligence is peculiarly within the jury's province and its finding is not to be disturbed if it is based on any reasonable view of the credible evidence. *Raszeja v. Brozek Heating & Sheet Metal Corp.*, 25 Wis. 2d 337, 346, 130 N.W.2d 855 (1964).

We conclude there was sufficient credible evidence to sustain the verdict. In determining whether the evidence supports a jury's verdict, it is the testimony which supports the verdict that is to be taken into consideration. *Bruno v. Biesecker,* 40 Wis. 2d 305, 312-13, 162 N.W.2d 135 (1968). Here, Leeder testified that in his opinion White was not experienced enough to handle the bull. In spite of this knowledge he allowed the animal to be kept in an unrestrained area which had to be entered by White at least twice a day. Moreover, Leeder's deposition was read into evidence in which Leeder testified that he could not say whether White was directly instructed regarding the use of a weapon around the bull. Finally, various witnesses suggested alternative measures which purportedly could have been taken to prevent the accident. For example, the bull could have been kept in its own pen

where the cows could be brought for servicing. Although vigorously disputed, the jury also had before it testimony that the bull was not ringed, and that ringing the bull and placing a chain in its nose would make the animal more docile and provide an audible warning of the bull's actions.

We also agree with the trial court that technical expert testimony was not required to establish causal negligence in this case. Before expert testimony is held to be a prerequisite, it must be found that the matter is not within the realm of ordinary experience and lay comprehension. *Netzel v. State Sand & Gravel Co.,* 51 Wis. 2d 1, 6, 186 N.W.2d 258 (1971). The requirement of expert testimony is an extraordinary one, and is to applied by the trial court only when unusually complex or esoteric issues are before the jury. *Id.* at 7. We do not find the situation here complex or esoteric. Rather, the issues involving whether the manner in which Leeder kept the bull negligently caused White injury was within the realm of lay comprehension. We conclude that the testimony of the witnesses produced at trial was sufficient to determine causal negligence.

Finally, Threshermen's claims that the trial court improperly threatened to apply the absent witness instruction, Wis. J.I. Civil 410, cited below.[2] The trial court informed Threshermen's that if it refused to

[2]410 WITNESS: ABSENCE

If a party fails to call a material witness within its control, or whom it would be more natural for that party to call than the opposing party, and the party fails to give a satisfactory explanation for not calling the witness, then you may infer that the evidence which the witness would give would be unfavorable to the party who failed to call the witness.

960

produce as a witness Harold Gransee, the person who allegedly placed the ring in the bull's nose, the absent witness instruction would be given. After objecting that Gransee was more naturally White's witness, Threshermen's called Gransee. Because the witness was called and the instruction not given, we agree with the court of appeals that the issue is moot. The defense could have refused to call the witness and preserved the perceived error but chose not to do so. We therefore decline to address the issue.

*By the Court.*—The decision of the court of appeals is reversed.