COURT OF APPEALS
DECISION
DATED AND FILED

December 23, 2025

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2025AP223**

Cir. Ct. No. 2020CV771

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT II

ELIZABETH KEMP AND SMT MEDICAL TECHNOLOGIES, LLC,

    PLAINTIFFS-APPELLANTS,

V.

WISCONSIN LAWYERS MUTUAL INSURANCE,

    DEFENDANT,

JILL GILBERT WELYTOK,

    DEFENDANT-RESPONDENT.

APPEAL from an order of the circuit court for Waukesha County: BRAD SCHIMEL, Judge. *Affirmed.*

Before Neubauer, P.J., Gundrum, and Lazar, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Elizabeth Kemp and SMT Medical Technologies, LLC brought a breach-of-contract action against Attorney Jill Welytok and her insurer, Wisconsin Lawyers Mutual Insurance (collectively, Welytok). Separately, Kemp brought a defamation action against Welytok. The cases were consolidated. The circuit court granted summary judgment on the defamation action on the basis that the statements were privileged. The court also granted summary judgment on the breach-of-contract action on the basis that Kemp and SMT Medical Technologies, LLC (collectively, Kemp) needed, but did not have, expert testimony and could not prove damages. Following Kemp's reconsideration motion, the court revived any breach-of-contract claims that did not require expert testimony, and it ordered Kemp to file an updated itemization of damages to include only those claims. When Kemp failed to do as ordered, the court granted Welytok's motion to dismiss any claims remaining in the breach-of-contract action. The court also denied two sanction motions Kemp brought against Welytok. On appeal, Kemp challenges all of the court's actions. We affirm.

## BACKGROUND

¶2 In June 2020, in Waukesha County Circuit Court Case No. 2020CV771, Kemp brought a breach-of-contract action against Welytok. Kemp generally alleged she hired Welytok, a registered patent attorney, to perform certain legal services for her relating to Kemp's intellectual property. Kemp claimed Welytok negligently performed those services, resulting in damage to Kemp. Kemp also claimed Welytok overcharged her for services or charged her for services that were not rendered. Welytok denied those allegations.

¶3 In April 2021, after Kemp failed to designate an expert as required by the circuit court's scheduling order, Welytok moved for summary judgment, in

part, on the basis that Kemp needed expert testimony to prove her allegations. Following briefing and argument, the court denied Welytok's summary judgment motion "with some level of hesitation." The court stated:

> [Kemp] has made [her] decision as to how [she] intend[s] to proceed, and [she has] not named an expert. That is how [she has] elected to proceed in this case. Further discovery may result in renewing that motion for summary judgment depending on how discovery evaluates the need for an expert.

¶4 As discovery progressed, Welytok renewed her motion for summary judgment. Welytok argued, in part, Kemp could not prove causation or damages without expert testimony. At an oral ruling in September 2022, the circuit court observed that it was most concerned about Kemp's ability to prove damages. Nevertheless, based on the summary judgment record before it, the court believed "there's a sufficient basis for the matter to at least move forward as it relates to the issue of damages." It denied Welytok's summary judgment motion.

¶5 Separately, in Waukesha County Circuit Court Case No. 2022CV204, Kemp filed a defamation action against Welytok. In that complaint, Kemp alleged Welytok authored and filed various statements in response to the Office of Lawyer Regulation (OLR)'s and the United States Patent and Trademark Office (USPTO)'s Office of Enforcement and Discipline's (OED) investigations that defamed Kemp, and Kemp sought money damages. Kemp also asserted Welytok defamed her in the context of a small claims case. In September 2022, the defamation case was consolidated with the breach-of-contract case. Although the cases were consolidated, they continued to develop separately.

¶6 On March 21, 2023, Welytok, prompted by Kemp's disclosure of an expert witness, filed a partial summary judgment motion on a claim in the

3

breach-of-contract case. As to this claim, Kemp alleged that "but for" Welytok's failure in not timely submitting an international patent, Kemp would have had the invention patented in foreign countries and profited from the patent. The circuit court granted Welytok's motion for partial summary judgment. It reminded Kemp that based on her failure to designate an expert pursuant to the court's scheduling order, she was precluded from relying on expert testimony at trial. Then, as to this claim, the court determined the process for obtaining an international patent involved complexity that was beyond the ability of the average juror to understand without expert testimony. The court concluded expert testimony would be necessary to establish the invention was sufficiently developed and that the World International Patent Organization would have given a favorable opinion on the invention. Because Kemp did not have an expert who could offer these opinions, the court determined Welytok was entitled to judgment on claims related to Welytok's failure to timely file an international patent.

¶7 Following the circuit court's determination, the court observed the only remaining issues in the breach-of-contract case related to Kemp's attempt to recover certain legal fees and costs from Welytok. Broadly, these claims related to Welytok's work to submit a patent application for the Empact System, which also included TAC-Key and TAC-Wedge products, and her work on a continuation-in-part patent application for the Sharps Needle Shark. The court set a trial on these claims.

¶8 Welytok then moved, in part, for a pretrial order that would preclude Kemp from offering evidence with respect to damages because Kemp had no expert witness to explain the nature of any purported damages. Welytok filed a brief in support of this motion, arguing that, although she did not separately move for summary judgment on all of the breach-of-contract claims, the circuit court's

determination that Kemp could not prove damages without expert testimony affected her ability to prove her remaining breach-of-contract claims. Kemp filed a response and asserted expert testimony was unnecessary.

¶9 At the all-day pretrial motion hearing, after the circuit court examined trial exhibits, deposition transcripts, and discovery, as well as heard argument, the court became concerned that "we are moving toward summary judgment." Starting with the claims related to the Empact System, Kemp generally sought damages in the amount she paid Welytok to submit the patent application and the amount Kemp paid a successor attorney, Don Ersler, to get the application accepted by the USPTO. However, the court observed that the contract between Kemp and Welytok provided:

> [Welytok] can make no promise or guarantee with respect to whether a patent will ultimately issue or whether it may be successfully challenged. That is both on page three and page six we find that language. But [Welytok] outlines in here that she will submit a patent application. The other documents that were provided to the Court now today by [Welytok] include the receipt from the patent office indicating the patent was received and that patent application that is included in all of this at page 13 and 14 clearly demonstrates that [s]he included the TAC-Key and TAC-Wedge devices that this morning I was told were part of the Empact patent. … Given the concession that [Kemp] cites that most patents end up with some office action, we don't have anyone to explain to the jury whether … this patent application was sufficiently written to have a reasonable chance to avoid an office action. There is no way to tell this. And Mr. Ersler is not going to be testifying—Mr. Ersler would testify only as to what he did. … He can't offer criticism of what Ms. Welytok did because that would need an expert. He can't talk about what the professional standard is for submission of a patent application because that would take an expert. I apologize if I have been too slow to pick up on all of this as this case has progressed. If this was something that should have been obvious to me a long time ago, … I didn't pick it up. It wasn't until the morning that the arguments became clear to me. … The contract claim in its very plain terms requires

> filing of an application. It happened. We have no one to explain this to a jury. We have no one to help them determine whether Ms. Welytok's work was sufficient. And pursuant to … a motion that was filed and granted, Ms. Welytok is not permitted to be the expert. … Ms. Kemp can't be the expert. It can't [be] Mr. Ersler. … We are out of witnesses that can potentially do this.

Ultimately, the court granted summary judgment on Kemp's breach-of-contract claims as related to the Empact System.

¶10 Turning to the Sharps Needle Shark claims, Welytok's contract provided she would work on an hourly-basis to file a continuation-in-part patent application. Welytok did work, but she was terminated before the application was filed. Kemp generally sought damages in the amount she paid Welytok prior to her termination and the amount she paid Ersler to complete the application. The circuit court determined:

> We are without anyone to explain to this jury whether the work that Ms. Welytok did complete justified a fee of $20,000 or not. She was terminated before the conclusion of the application process. … We have a dispute over what was her work worth and Ms. Welytok is not going to be able to testify as an expert either but she—I am sure she will say—she will say I did plenty of work to support this. We have no expert that can say otherwise. We are in negligence area then. Well, even if it's breach of contract, we have no one to explain what that is worth.

The court granted summary judgment in favor of Welytok on this claim, dismissed Kemp's complaint, and it cancelled the trial.

¶11 Following the circuit court's dismissal of the breach-of-contract action, Welytok moved for summary judgment on the defamation claims. Kemp, in turn, filed two motions for sanctions—one in regard to Welytok's counterclaim in the defamation action, the other in regard to arguments opposing counsel made during the breach-of-contract pretrial motion hearing. Kemp also filed a motion

for reconsideration in regard to the court's dismissal of her breach-of-contract action.

¶12     The circuit court scheduled hearings to address these motions.  As to Welytok's motion for summary judgment in the defamation action, Welytok argued she was entitled to judgment as a matter of law because all of the challenged statements were privileged.  She asserted the statements were made in the context of judicial or quasi-judicial proceedings and related to the issues before these tribunals.  The court agreed, granted judgment in favor of Welytok, and dismissed Kemps' defamation claims.

¶13     As to Kemp's motions for sanctions, Kemp first wanted the circuit court to impose sanctions on Welytok for her counterclaim in the defamation case.  As background, Welytok brought a counterclaim against Kemp for defamation based on an affidavit submitted by her attorney.  When Kemp asked Welytok to withdraw the claim because the statement was not made by Kemp, Welytok offered to withdraw the claim.  Kemp, however, stated she would "not agree to a dismissal that does not provide for sanctions."  Following argument, the court denied Kemp's motion for sanctions.  It reasoned:

> [W]hen a party is served with a motion under [WIS. STAT. § 895.044(2)(a)[(2023-24[1]], … they have 21 days after service to act.  [Welytok] offer[ed] to act on this before the motion was even filed or served. … As has been conceded or argued in [Kemp's] motion, [Welytok has] done nothing to prosecute that claim.  [Welytok has] done nothing to proceed it on whatsoever.  There has been no discovery.  There have been no arguments in court. … [I]t's unclear to me why when [Welytok] says [she] will dismiss a claim that could have adverse consequences if found against

---

[1] All references to the Wisconsin Statutes are to the 2023-24 version.

[Kemp], … [Kemp] would object to it. But it's undisputed that [Kemp] did. So I don't think it's sanctionable that [Welytok] just simply let it hang here until the Court got around to dealing with it. … We are here now. … I will dismiss that counterclaim. And I will decline to impose any sanctions.

¶14 Regarding Kemp's second motion for sanctions, Kemp brought this motion against Welytok and defense counsel for "filing altered and false documents with the circuit court and using them to induce the court to make an erroneous ruling based on those documents[.]" (Capitalization omitted.) Kemp argued that the court dismissed her breach-of-contract claims related to the Sharps Needle Shark based on an arbitration clause. Kemp argued the arbitration agreement related to the wrong company and the wrong product and there was no arbitration clause.

¶15 The circuit court concluded the document with the arbitration clause was irrelevant. It explained:

> My basis for issuing a summary judgment determination was because there is no expert to explain to a jury in this case what proper billing should be, to help them understand what are the consequences of terminating a lawyer before the work is completed, … we didn't have any expert. Why does the arbitration issue matter? I observed that there were two ways to go about this, one is you could have an expert like an arbitration panel or arbitrator that could have some expertise and resolve these questions but when it's in front of a jury which is what we have, there needs to be some expert to explain all of this.

The court continued:

> I did not make my decision based on the assertion that this should have gone to arbitration. I understand that was argued at that hearing. But that is not what the basis of my ruling was.

¶16 Ultimately, the circuit court declined to award sanctions. It explained:

> I am frankly having difficulty understanding the significance of this argument, this motion for sanctions because we were dealing with arguments as to whether this case could proceed to trial on the malpractice claim without an expert. … This was all a side show to that. It didn't have ultimately any bearing on that question. That is all we were dealing with at that time. So I can't conclude that there was a material misrepresentation to the Court. … [T]here are many thousands of pages of documents here. It is confusing to say the least to have this—these two firms with these terribly similar names SMTMT and then SMT Medical Technologies. … I still have to check my notes to see which one we are talking about at which time. I can't conclude this is a material misrepresentation. I don't think that things that are immaterial or have only fleeting relevance, I don't think those are the kinds of things that the statute intends me to sanction people for. … [I]t does appear true that a mistake was made that maybe a more careful review by counsel of the file, which again I have acknowledged is enormous, is insanely complicated, these files are full of countless distractions. … This has been an enormously frustrating case to try to manage. … It has been incredibly complex. If it's that complex for me, I am sure it's complex for counsel.

¶17 Finally, turning to Kemp's motion for reconsideration, the circuit court observed Kemp asked the court to reconsider its grant of summary judgment on the breach-of-contract claims to the extent that some of her claims would be presentable without expert testimony. Kemp made an offer of proof that she could show Welytok improperly marked up certain invoices, that Welytok billed and was paid for the same legal work twice, and that Kemp paid Welytok to do certain work that she ultimately had to pay another attorney to perform.

¶18 The circuit court granted, in part, and denied, in part, Kemp's reconsideration motion. The court denied Kemp's motion with respect to any portion of the contract claims that required expert testimony. The court granted

9

Kemp's reconsideration motion as to her allegations such as double billing or unauthorized withdrawal charges so long as expert testimony was not required on those portions of Kemp's claims.

¶19    The circuit court determined that, based on "the narrowing that [the court] made of the issues," it would require Kemp to file an itemization of damages "so that we all know what you're talking about and if the defense sees something that they think would require expert testimony or raises this concern about whether this is a separate nonparty that made a particular payment, well they can have an opportunity to raise that."  The court required Kemp to "submit an itemization of damages on or before November 18, 2024."

¶20    On November 11, 2024, Kemp filed a letter stating, the circuit court's procedure would "usurp its judicial role."  She ultimately did not file an itemization of damages by November 18.

¶21    On November 21, 2024, Welytok moved to dismiss any remaining claims against her based on Kemp's failure to file the itemization.  Welytok argued Kemp's failure to file the required itemization "should result in a bar on Kemp's presentation of any evidence related to any item of damage claimed in this case."  Welytok asserted that without evidence of damages, Kemp could not prove her case.

¶22    On November 22, 2024, Kemp filed a letter stating she previously submitted itemized damages on July 2, 2021, in proposed trial exhibits, and in a March 16, 2023 letter.  Kemp complained the circuit court's order requiring her to submit a "new" itemization was ambiguous and she "felt that the previously provided information would suffice."

¶23    On December 12, 2024, the circuit court issued a written order, concluding Kemp violated its October 16, 2024 oral order, memorialized by its November 12, 2024 written order, that required Kemp to file an itemization of damages by November 18, 2024.  The court quoted from the motion hearing transcript as well as from its signed written order.  It observed that when asked how long it would take for Kemp to file an itemization of damages, Kemp advised the court that 30 days would be "enough time to get it done."  The court stated, "There was no room for doubt that the Court expected a new Itemization of Damages that reflected the current, surviving claims."  The court also found that based on the letter Kemp submitted on November 11, 2024, her current assertion that she intended previously filed documents to serve as the itemization of damages was disingenuous.  The court determined, "[Kemp] has not filed the Itemization that the Court required to be filed by November 18, 2024."  It set a briefing schedule on Welytok's dismissal motion.

¶24    Following briefing on the dismissal motion, the circuit court entered a written order dismissing Kemp's remaining claims based on her failure to file the itemization.  Kemp appeals.  Additional facts will be included below.

## DISCUSSION

¶25    On appeal, Kemp argues the circuit court erred in multiple ways. She asserts the court erred when granting summary judgment on the defamation case and by dismissing her breach-of-contract claims at the pretrial motion hearing.  Kemp also argues the court erred by refusing to sanction Welytok for maintaining her defamation counterclaim and for relying on inaccurate documents at the breach-of-contract pretrial motion hearing.  Finally, she argues the court

erred by requiring a new itemization of damages and dismissing her revived breach-of-contract claims. We address each argument in turn.

## I.    Summary judgment on the defamation claims

¶26    Kemp first argues the circuit court erred by granting summary judgment on her defamation claims on the basis that the allegedly defamatory statements were privileged. On appeal, she argues Welytok's statements were not privileged.

¶27    A statement "is defamatory if it tends to harm the reputation of another so as to lower that person in the estimation of the community or deter third persons from associating or dealing with him or her." *Vultaggio v. Yasko*, 215 Wis. 2d 326, 330, 572 N.W.2d 450 (1998). "However, not all defamations are actionable. Some defamations fall within a class of conduct which the law terms privileged." *Id.* (citation omitted). Statements made in judicial or quasi-judicial proceedings are protected by an absolute privilege so long as the statements are related to the matter under consideration. *Rady v. Lutz*, 150 Wis. 2d 643, 647-48, 444 N.W.2d 58 (Ct. App. 1989).

¶28    Here, the allegedly defamatory statements were made by Welytok to the OLR and the OED in response to grievances filed against her. The other allegedly defamatory statement was made by Welytok to opposing counsel after opposing counsel named Kemp as a witness in a small claims case where Welytok was the defendant.

¶29      On appeal, Kemp first argues the circuit court erred by concluding OLR/OED investigatory proceedings were quasi-judicial in nature.[2]  In her brief, Kemp does not sufficiently develop an argument as to why these proceedings are *not* quasi-judicial in nature.  Rather, her objection is based on the fact that there is no existing case law establishing OLR/OED proceedings are quasi-judicial in nature.  However, we have previously held that actions to revoke licenses or other professional discipline are quasi-judicial in nature.  *See*, *e.g.*, ***Schier v. Denny***, 12 Wis. 2d 544, 548-49, 107 N.W.2d 611 (1961) (the state real estate brokers board's complaint procedure is quasi-judicial); ***Hartman v. Buerger***, 71 Wis. 2d 393, 399-400, 238 N.W.2d 505 (1976) (liquor licensing authority's proceedings are quasi-judicial).  We agree with the court that there is no meaningful distinction between these proceedings and the OLR/OED proceedings.  The OLR/OED proceedings are quasi-judicial in nature.

¶30      Kemp then argues the statements are not privileged because Welytok's statements had no relation to the OLR/OED matters or the small claims matter.  "An absolute privileged statement is subject to only two restrictions: It must be made in a procedural context that is recognized as affording absolute privilege, and it must be relevant to the matter under consideration."  ***Rady***, 150 Wis. 2d at 647-48.  "[T]he test is whether the remark has any pertinence, no matter how remote, to the controversy and judicial proceedings at hand."  ***Spoehr v. Mittelstadt***, 34 Wis. 2d 653, 663, 150 N.W.2d 502 (1967).

---

[2] Kemp appropriately does not object to the determination that the small claims proceeding was judicial in nature.

¶31 The circuit court observed that Welytok's statements to the OLR/OED were relevant to those proceedings. As the court explained, through her statements, Welytok offered various reasons to the investigators as to why "they should find that Ms. Kemp has improper motives as a grievant or is not credible or has a bad character for truthfulness. All of those things, they are pertinent or relevant to the case." We agree with the court. *See Rady*, 150 Wis. 2d at 650 ("All doubts should be resolved in favor of relevance."); *see also id.* (Even if the statement is "is laden with the writer's subjective views of [the plaintiff's] motives and includes descriptive language that may be libelous per se if proven untrue, these considerations do not negate the privilege.").

¶32 As for the small claims matter, the circuit court observed Welytok's statements to opposing counsel occurred after counsel named Kemp on his witness list. The court explained, "Welytok responded to him by pointing out her reasons to believe that Ms. Kemp would be an unreliable, a discredited, a dishonest, … whatever terminology you might use, but giving [opposing counsel] reasons that she believes he should not put her on the witness stand." The court stated, "That is related to the proceedings." We again agree with the court. *See id.*

¶33 Because the allegedly defamatory statements were privileged, Welytok was entitled to summary judgment on the defamation claims. *See* WIS. STAT. § 802.08(2) (Summary judgment is appropriate when "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."). The circuit court properly granted summary judgment and dismissed the defamation claims against her.

**II.  Dismissal of the breach-of-contract claims at the pretrial motion hearing**

¶34    Kemp next makes various arguments related to the circuit court's dismissal of her breach-of-contract claims for lack of expert testimony at the pretrial motion hearing.  She asserts the court's dismissal of her claims at this hearing was improper because there was no proper summary judgment motion pending.  Kemp argues the court erred by determining expert testimony was needed "on all claims."  She asserts the court should have permitted her to "demonstrate her knowledge of the workings of the patent office procedures" and improperly limited her testimony in other ways.  She also contends the court's limitation on Ersler's testimony was improper.

¶35    We start with Kemp's objections to the circuit court's limitations on testimony.  At the time of the pretrial motion hearing, it is undisputed that Kemp was precluded from relying on expert testimony to prove her breach-of-contract claims because she failed to timely name an expert witness in this case.  To the extent Kemp now asserts she should have been permitted to testify about patent office procedures, applications or other legal matters, the court, in a written order issued months before the challenged pretrial hearing, observed that Kemp's claimed patent expertise was based

> solely on the apparent fact that she has done so in the past. However, her argument that she is an expert on this question is undermined by her acknowledgement that in each of her patent applications, both domestic and foreign, she has hired legal counsel to navigate the process.

¶36    On appeal, Kemp does not explain why the circuit court's determination that she could not testify as to patent office procedures because she has routinely hired legal counsel "to navigate the process" was erroneous.  *See Martindale v. Ripp*, 2001 WI 113, ¶28, 246 Wis. 2d 67, 629 N.W.2d 698 ("We

review a circuit court's decision to admit or exclude evidence under an erroneous exercise of discretion standard."); *see* ***State v. Pettit***, 171 Wis. 2d 627, 646, 492 N.W.2d 633 (Ct. App. 1992) (We do not address undeveloped arguments.). She also does not explain how her proposed testimony would have been permissible given the court's prohibition on her use of expert testimony. *See* ***Pettit***, 171 Wis. 2d at 646.

¶37     Kemp also argues the circuit court erred by precluding Ersler "from testifying as to what he did on [Kemp's] behalf after Welytok was terminated including what he charged for his legal services." (Capitalization omitted.) Kemp's argument on this point, however, is belied by the record. At the pretrial motion hearing, the court stated multiple times that Ersler would be able to testify as to what he did for Kemp.

¶38     The circuit court did prohibit Ersler from "offer[ing] criticism of what Ms. Welytok did because that would need an expert," from "talk[ing] about … the professional standards … for submission of a patent application because that would take an expert," and whether "the work that Ms. Welytok did complete justified a fee of $20,000 or not." Although Kemp argues Ersler is qualified to offer testimony on these subjects, as the court stated at the pretrial motion hearing:

> This is not about his qualifications to talk about these kinds of things. It's whether that evidence is permitted in this trial and it's not.

¶39     Given the circuit court's determination that Kemp would be prohibited from relying on expert testimony based on her failure to designate an expert in compliance with the court's scheduling order, we conclude the court's subsequent limitation of Ersler's testimony as outlined above did not constitute an erroneous exercise of discretion. *See* ***Martindale***, 246 Wis. 2d 67, ¶28.

¶40    We then turn to Kemp's assertion that the circuit court's dismissal of her claims at the pretrial motion hearing for lack of expert testimony was improper because there was no proper summary judgment motion pending.  We disagree.  Summary judgment based on Kemp's lack of an expert had been fully briefed multiple times.  Further, Welytok stated in her brief in support of her motions in limine that the court's partial grant of summary judgment for lack of expert testimony was fatal to the remaining breach-of-contract claims.  Welytok argued that without expert testimony, Kemp could not prove these remaining claims at trial.  Kemp responded to Welytok's brief and advised the court that no expert testimony was needed.

¶41    Kemp also argues the circuit court erred by determining the claims discussed at the pretrial motion hearing required expert testimony.   "The requirement of expert testimony is an extraordinary one, and is to [be] applied by the trial court only when unusually complex or esoteric issues are before the jury." *White v. Leeder*, 149 Wis. 2d 948, 960, 440 N.W.2d 557 (1989).  "Before expert testimony is held to be a prerequisite, it must be found that the matter is not within the realm of ordinary experience and lay comprehension." *Id.*

¶42    Here, the circuit court determined expert testimony was needed in regard to Kemp's breach-of-contract claims as related to Welytok's work for the Empact System patent application.  The court found that the contract called for Welytok to file a patent application, and she filed the application.  The application was partially accepted by the USPTO and underwent office action on other parts.  Kemp conceded that it was common for patent applications to undergo office action, but she argued Welytok's work was insufficient because the application was not accepted fully by the USPTO.  The court determined Kemp needed an expert to explain to the jury why Welytok's application was insufficient.  We

agree with the court. Kemp's assertion involves complex and technical knowledge of intellectual property law and practice that are not within the common knowledge and ordinary experience of an average juror. The court did not err by determining expert testimony was required in order for Kemp to maintain this breach-of-contract action. *See id.*

¶43 The same is true for Kemp's breach-of-contract claim related to Welytok's work on the continuation-in-part patent application for the Sharps Needle Shark. The circuit court observed that in regard to this claim, the parties had a "dispute over what [Welytok's] work [was] worth." The court determined Kemp needed an expert to explain to the jury why Welytok's work did not justify the fees that were charged. We again agree with the court. Kemp's assertion involves complex and technical knowledge of intellectual property law and practice, including associated costs and fees, that are not within the common knowledge and ordinary experience of an average juror. The court did not err by determining expert testimony was required in order for Kemp to maintain this breach-of-contract action. *See id.*

¶44 Because expert testimony was required to prove these claims, the circuit court properly granted summary judgment in Welytok's favor. *See Weiss v. United Fire & Cas. Co.*, 197 Wis. 2d 365, 381, 541 N.W.2d 753 (1995) ("The lack of expert testimony in cases which are so complex or technical that a jury would be speculating without the assistance of expert testimony constitutes an insufficiency of proof."); *see also* WIS. STAT. § 802.08(2).

¶45 At this point, the circuit court granted summary judgment in favor of Welytok on *all* of the breach-of-contract claims. On appeal, Kemp argues it was error for the court to determine that expert testimony was needed on all of her

remaining claims and to grant judgment on them. However, we need not address this argument because Kemp moved for reconsideration on the basis that some of the remaining claims did not require expert testimony and should be revived. The court granted this part of Kemp's reconsideration motion.

### III. Requiring an itemization of damages

¶46 Kemp acknowledges the circuit court granted her motion for reconsideration and revived the breach-of-contract claims that did not require expert testimony. However, she objects to the court's requirement that she file an itemization of damages. She asserts the court's requirement that she submit an itemization of damages amounted to a "delegation to [Welytok] to determine whether an expert is needed for each item of damage [and] constitute[s] an impermissible delegation of judicial powers."

¶47 We disagree. The circuit court's written order following the hearing on the motion for reconsideration provided:

> 1. Plaintiff's, Kemp's, motion is granted, in part, and denied, in part. Plaintiff's, Kemp's, motion is denied with respect to any portion of the contract claim that requires expert testimony with respect to any matter related to the claim. Plaintiff's, Kemp's, motion with respect to claims for breach of contract for double billing or unauthorized withdrawal charges to Plaintiff's, Kemp's, credit card is granted to the extent that expert testimony is not required to prove that portion of Plaintiff's, Kemp's claim.
>
> 2. Plaintiff, Kemp, shall submit an itemization of damages on or before November 18, 2024.
>
> 3. Any motion related to that filing by Defendants', Jill Gilbert Welytok and/or Wisconsin Lawyer's Mutual Insurance, shall be filed on or before December 18, 2024.
>
> 4. Any response to any motion filed by the Defendants, by the Plaintiff, Kemp, shall be filed on or before January 8, 2025.

5. Any reply filed by the Defendants must be filed on or before January 15, 2024.

6. A motion hearing is scheduled for January 27, 2025 at 1:30 p.m. via Zoom. If there are no motions filed, then that time will be used to set a trial date.

¶48 Nothing in this order suggests the circuit court delegated the determination of whether a claim required expert testimony to Welytok. On the contrary, to the extent that Welytok believed any of Kemp's claims required expert testimony, the matter would be briefed and decided by the court at a scheduled motion hearing. *See White*, 149 Wis. 2d at 960. The court did not impermissibly delegate its judicial authority to Welytok.

## IV. Sanctions for Welytok's defamation counterclaim

¶49 Kemp next argues the circuit court erred by failing "to sanction" Welytok for maintaining her counterclaim in the defamation action. Kemp asserts the court "was obligated under [WIS. STAT. §] 895.044(2)(b) to impose sanctions against Welytok." We disagree.

¶50 Actual costs, or sanctions, awarded under WIS. STAT. § 895.044(2) only become relevant if the circuit court first finds by "clear and convincing evidence" that either of the following grounds for sanctions apply:

> (a) The … counterclaim … was commenced, used, or continued in bad faith, solely for purposes of harassing or maliciously injuring another.
>
> (b) The party or the party's attorney knew, or should have known, that the … counterclaim … was without any reasonable basis in law or equity and could not be supported by a good faith argument for an extension, modification, or reversal of existing law.

Sec. 895.044(1), (2).

20

¶51     As to both grounds for sanctions, we apply a mixed standard of review.  *See **Stern v. Thompson & Coates, Ltd.***, 185 Wis. 2d 220, 236, 517 N.W.2d 658 (1994).  We rely on the circuit court's findings of fact "unless they are against the great weight and clear preponderance of the evidence."  *See **id.*** Whether certain facts "fulfill the legal standard" for either ground under WIS. STAT. § 895.044(1) is a question of law.  *See **Stern***, 185 Wis. 2d at 236.

¶52     Here, the circuit court found that Welytok brought a counterclaim against Kemp for defamation based on an affidavit filed by Kemp's counsel, and, after Kemp advised Welytok that the statement was not made by her, Welytok immediately offered to withdraw the claim.  The court found Kemp refused to agree to a dismissal because she wanted the court to award sanctions against Welytok, and, in response, Welytok did nothing in furtherance of this counterclaim.  We agree with the court's determination that these facts do not fulfill the legal standard for sanctions and therefore actual costs, or sanctions, were not appropriate.  *See **id.***

## V.     Sanctions for misrepresentation

¶53     Kemp next argues Welytok and her counsel should be sanctioned for relying on "faux documents" during the breach-of-contract pretrial motion hearing.  (Capitalization omitted.)   Kemp offers arguments as to why the documents are inaccurate and faults Welytok and her counsel for failing to "exercise[] due diligence by reviewing the document prior to making representations to the court."  Kemp asserts that the circuit court "has shown a lack of concern for honesty to the tribunal" and asks this court to sanction Welytok and defense counsel.

¶54 We decline Kemp's request to sanction Welytok or defense counsel. In her argument, Kemp ignores the reasons why the circuit court declined to sanction Welytok or her counsel. Specifically, the court found that although it appeared a mistake was made during the pretrial hearing, the inaccurate documents did not form the basis for the court's determination, the documents were "immaterial or h[ad] only fleeting relevance" to the case, the names of the firms at issue were very similar, the record was incredibly complex for the court with "many thousands of pages of documents," and if the record was that complex, it was also presumably complex for the parties to the litigation. Given the court's factual determinations, we agree with the court that sanctions in this situation would not be appropriate. *See* WIS. STAT. § 802.05(3)(b) ("A sanction imposed for violation of this rule shall be limited to what is sufficient to deter repetition of such conduct or comparable conduct by others similarly situated.").

## VI. Dismissal for noncompliance with the circuit court's order requiring an itemization

¶55 Kemp then argues the circuit court erred by dismissing her remaining breach-of-contract claims because she failed to submit a new itemization of damages. She offers argument as to why the court's order did not actually require her to submit a "new" itemization of damages. She faults the court for not explicitly using the word, "new" when it ordered her to provide an itemization of damages. She also argues "[t]he record does not provide any information as to why the trial court thought that it had required [Kemp] to submit an entirely *new* itemization of damages."

¶56 We reject Kemp's contentions. The record unambiguously required Kemp to file a new itemization of damages. The circuit court observed it had granted judgment on all of Kemp's claims that required expert testimony and it

wanted Kemp to file a new itemization as to what remained. Kemp also advised the court she could complete the filing within 30 days. Yet, she did not file a new itemization.

¶57    Kemp next seemingly argues the circuit court lacked authority to dismiss her remaining claims based on her violation of its order. She asserts there was no "scheduling order requiring [Kemp] to submit a 'new itemization' of damages." We disagree. The court's order required Kemp to submit an itemization of damages by November 18, 2024. Further, to the extent Kemp believes the court may only sanction a party for a violation of an *original* scheduling order, we reject it. *See, e.g.*, WIS. STAT. § 805.03 ("[F]or failure of any party … to obey any order of court, the court … may make such orders in regard to the failure as are just[.]").

¶58    Here, the record reflects that after the circuit court entered its December 2024 order, advising Kemp that she had violated its October 2024 oral order, memorialized by the November 2024 written order, by not filing a new itemization of damages, Kemp still did not file an itemization of damages. Instead, she maintained her position that a new itemization was unnecessary and she offered a variety of reasons as to why she was not required to file one.

¶59    However, as the circuit court stated in its January 30, 2025 dismissal order:

> Here is what matters in the end: as of the issuance of this Order, Plaintiff has still failed to file the required Itemization. Plaintiff['s] counsel does not indicate what "latitude" to which Plaintiff feels entitled, but from the Court's perspective, we are now nearly 2 and ½ months past the original deadline, and are just days away from the scheduled motion hearing and Plaintiff still has not filed the Itemization that was clearly, repeatedly and explicitly required to be filed.

23

The court then dismissed all of Kemp's claims against Welytok. We perceive no error in the court's dismissal of Kemp's breach-of-contract action based on her noncompliance with a direct court order.

*By the Court*.—Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.